CHARLES R. CRAFTON, Appellant, v. WILL WALL
EDWARDS, Appellee.—435 S.W.(2d) 486.

Middle Section. March 29, 1968.

Certiorari Denied by Supreme Court October 7, 1968.

Warfield, Entrekin & Jones, Nashville, Hugh T. Shelton, Jr., Columbia, for appellant.

MacFarland & Colley, Columbia, for appellee.

SHRIVER, P.J. Appellant, Charles R. Crafton, filed suit in Circuit Court of Maury County against Will Wall Edwards, to recover for personal injuries alleged to have been received in an automobile accident wherein the

vehicle driven by Crafton was struck in the rear by the vehicle driven by Edwards.

The parties will be referred to hereinafter as plaintiff and defendant as they appeared in the Court below.

The case was tried to a jury in the Circuit Court at Columbia, Tennessee and resulted in a verdict in favor of the plaintiff for $1,200.00. Plaintiff filed a motion for a new trial on the grounds that the verdict was so inadequate as to indicate passion, prejudice and caprice on the part of the jury and that the form of the verdict as returned by the jury was defective. After the Court overruled the motion for a new trial and approved the verdict, plaintiff perfected his appeal to this Court and has assigned errors.

## THE FACTS

As is alleged in the declaration and shown by the proof, plaintiff, Charles R. Crafton, on August 20, 1963, was driving his pickup truck in a southerly direction on Garden Street in Columbia, Tennessee, when he stopped at the intersection of that street with West Sixth Street in response to a traffiic light and while in his position waiting for the signal light to change from red to green, his truck was struck from the rear by an automobile owned and operated by defendant Will Wall Edwards. The impact knocked plaintiff's pickup truck forward and into the rear of another car resulting in damage to that car amounting to $52.92.

Defendant, Edwards, testified that he ran into the rear of plaintiff's car because his brakes suddenly failed without warning. He stated that he had had no previous difficulty with the brakes and that they had been working prior to the accident. The investigating officer testified

that when he arrived at the scene and examined defendant's car the brakes were not operating and that he found no skid marks on the street from defendant's automobile.

The mechanic who repaired defendant's car testified that the steel brake cable was broken and that in such condition the brakes would not operate. He said that the damage from the collision was to the front of defendant's car and that there was no damage near the ruptured brake line.

Plaintiff testified that he was a construction foreman for a paving company at the time of the accident and that following said accident he was suffering pain in the back of his neck so he went to see Doctor John Cole who examined him and had the nurse rub some kind of linament on his neck. The following day he went to work at his job but, as he described it, ''I just felt like my muscles started quivering or something, in my back, or something and I just, I went to a tree and I just slid right down beside it and from there on a boy got me up and got me to the truck and took me back to the doctor again.''

He stated that Dr. Cole examined him and recommended that he go to Vanderbilt Hospital which he did, and he was treated there by other doctors.

He was in the Vanderbilt Hospital approximately a week and upon returning home he remained in bed for some time. Subsequently, he went to Parkview Hospital but it was shown that this hospitalization was primarily because of a skin rash which was thought by doctors to be a reaction from some of the drugs he had been taking.

It was brought out in his testimony that plaintiff had been involved in another accident several years prior to

the accident involved in this suit and that in the prior accident the femur of his right leg was broken which resulted in his right leg being one and one-half inches shorter than his left leg. At the time of the trial herein he was wearing a built-up shoe to compensate for his shortened leg. The shoe had been prescribed for him by Dr. Jones who treated him for the difficulty he was experiencing with his back following the accident involved here.

It was shown that his hospital bill amounted to $89.00 while his other medical expenses and doctor's bills amounted to $446.66, and he testified that he lost wages as a result of the accident amounting to $437.50.

It was shown that plaintiff is working regularly at the same job he had before the last accident and at the same rate of pay.

The depositions of two doctors who examined and treated him will be discussed hereinafter in connection with the assignment concerning the inadequacy of the verdict.

## ASSIGNMENTS OF ERROR

*Assignment No. I* says that the Court erred in approving a verdict which is unknown to Tennessee law, which verdict was written by the foreman and reads as follows:

"We, the jury, find the defendant guilty of negligence to a minor degree and feel that the plaintiff should be awarded the amount of $1,200.00."

*Assignment No. II* is as follows:

"The Court erred in approving a verdict which did not follow the charge of the Court. The Court's charge

covered the question of proximate cause and then covered carefully the question of how damages should be assessed if the defendant was negligent. The Court is in error in approving a verdict where the jury failed to follow such instructions, but instead adjusted the damages to fit what they determined to be the degree of negligence."

*Assignment No. III* is to the effect that the Court erred in approving the verdict which was so inadequate as to indicate passion, prejudice and caprice on the part of the jury.

In considering the first and second assignments, the record shows that the following occurred when the jury returned to announce the verdict:

"THE COURT: All right, all present. All right, all present. Yes, sir. Ladies and Gentlemen have you arrived at a verdict in this case.

THE JURY: We have.

THE COURT: Read us your verdict, if you will.

JUROR HOWARD SHROPSHIRE: We the Jury find the defendant guilty of negligence to a minor degree and feel that the plaintiff should be awarded the amount of Twelve Hundred ($1200) Dollars.

THE COURT: Is that the verdict of the jury now all of you, speak out now.

THE JURY: Yes, sir.

THE COURT: I take it then that you find the issues in favor of the plaintiff, Mr. Charles R. Crafton, and against the defendant, Will Wall Edwards, and award the plaintiff Twelve Hundred ($1200) Dollars in damages, is that what you mean?

THE JURY: Yes, sir.

THE COURT: Is that the verdict, now speak up now.

THE JURY: Yes, sir.

THE COURT: Anything else.

MR. COLLEY: No, sir.

MR. SHELTON: That's all.''

It is pointed out by counsel that the case did not involve any question of contributory negligence, therefore, there was no question of mitigation of damages by reason of remote contributory negligence.

Counsel for plaintiff argue that the jury had to determine if the defendant's acts were negligent and were the proximate cause of the injuries complained of and, if so, they had to assess reasonable damages under the law. It is argued that it is also obvious from the wording of the verdict that the jurors thought they had a right to adjust the amount of damages in accordance with the degree of negligence. It is pointed out that, in Tennessee, a jury has no right to diminish the award for damages in a case such as this where no contributory negligence is involved.

In his charge to the jury the Trial Judge stated that the jurors should bear in mind that there are certain statutes concerning brakes and that it becomes an act of negligence to drive an automobile without adequate brakes rendering the driver responsible if that was the direct and proximate cause of the accident. However, he charged that the law also recognizes a latent defect, which means a hidden defect, or something that one would not have any knowledge of by the exercise of ordinary care. The Court went on to state:

"The rule is that a driver of a motor vehicle is not liable for damage resulting from, that is latent defect, or brakes for instance due to a latent defect of which he would not have acquired knowledge in the exercise of due care."

The charge continued:

"That if it appears from the proof that a defendant's brakes were inadequate to control the movements of the automobile as required by statute the burden then passes to the defendant to convince the Jury that the violation of the statute if unintentional was consistent with due care on his part in having the brakes inspected and repaired and that the defect existed at the time of the accident wholly without his fault."

Upon the return to the Courtroom as seen hereinabove the jury reported that they found the defendant guilty of negligence to a minor degree and felt that the plaintiff should be awarded $1,200.00.

The Court then clarified and made certain the verdict by questioning the jury as to its meaning and received their assent. Polling of the jury was not called for by counsel for either party.

In Briscoe v. Allison, 200 Tenn. 115, 290 S.W.2d 864, the Court held that in construing a verdict the Court must give it the most favorable interpretation so as to give effect to the intention of the jurors, if that intention be permissible under the law and ascertainable from the phraseology used. It also held that, if, after examination of the terms of the verdict, the Court is able to place a construction thereon that will uphold it, it is incumbent upon the Court to do so.

The opinion also states that it is not essential that a verdict be technically responsive to the issues joined, but, if in its sense and legal effect it be substantially so, it will suffice.

■ In the case at bar, we do not consider that the Court is compelled to conclude from the language of the verdict that the jury attempted to adjust the damages in accordance with the degree of negligence of the defendant. If the defendant was guilty of negligence, even in a minor degree, which proximately caused or contributed to the injury of the plaintiff, without any showing of contributory negligence on the part of the plaintiff, defendant would be liable to the plaintiff in damages. Thus, if it could be successfully argued that the verdict in this case was not technically responsive to the issues joined, it was still sufficient in legal effect to be moulded into a valid verdict by the Trial Judge, as was done in this case.

It results that Assignments Nos. I and II are overruled.

Counsel for plaintiff insists that, inasmuch as plaintiff's special damages amounted to $1,089.96, whereas, the verdict was for $1,200.00, that this left only $110.04 as compensation for defendant's disability and pain and suffering which is entirely inadequate.

It is pointed out by counsel for defendant that the special damages of $1,089.96 included medical expenses, plus loss of wages, and it is argued that the jury could easily have drawn the conclusion from this proof that most of the plaintiff's difficulties resulted from the prior accident which caused the shortening of his right leg, and

that this conclusion is well supported by medical testimony.

We think it is true that conflicting conclusions could be drawn from the proof as to the cause of the pain in plaintiff's back and it was for the jury to determine from the evidence how much of the back disorder resulted from the first accident and how much was chargeable to the accident involved here.

The jury heard the plaintiff and the doctors testify and, of course, had the right to appraise this testimony and give such weight to it as they deemed right and proper.

For example, Dr. John R. Jones testifying as to his diagnosis and treatment of plaintiff, among other things, stated (Page 119) that when he examined the patient on September 3, 1963 he was doing well and had only mild low back pain with activity, and was comfortable at rest, and at that time he advised plaintiff to wear a lift on the right foot in order to compensate for the shortening of the leg secondary to his old injury. The doctor stated: "I felt thereby to reduce some of the mechanical forces applied to his back." The doctor was then asked to explain what, if any effect, the shortening of his leg would have on the back and he answered:

"A. I felt that if he continued to walk with a shortening which, incidentally measured one and one-half inches, that this would tend to prolong his symptoms in regard to the back strain. For this reason the lift was ordered in order to equalize his leg length."

On being further questioned, as to the percentage of disability suffered by plaintiff, the doctor answered:

"A. I feel that the greater portion of Mr. Crafton's disability is on the basis of his prior fracture of the thigh with the result of shortening and deformity. Because of the distinct possibility of nerve root compression in the low back, I feel there is an element of permanent disability as the result of his back condition. I would estimate this to be in the range of five per cent of the body as a whole."

At another point, Dr. Jones testified as follows:

"Q. In other words, it is your opinion the greater portion of his disability is the result of this old injury to his femur?

"A. It is, yes."

When plaintiff was asked to describe the pains he suffered while in the hospital, he stated:

"A. Well my back, I mean the muscles seemed to run all into a small pit of my back or something, it just started to quiver and jerk, I'd try to walk and my legs would just go to quivering or something and I just couldn't do it and I had a hurting in my legs and in the lower part of my back and muscles."

Dr. David Scheibert, a neurosurgeon, examined plaintiff, and when questioned concerning a claim on the part of the plaintiff that his injuries had affected his sexual capacity, he answered as follows:

"A. I don't believe that this is a complaint that is seen in other people that I can recall off hand, I think this is quite an unusual complaint of pain

and to me has no great significance except as it affects the patient.''

At another point Dr. Scheibert testified as follows:

''Q. You gave him the various tests that you described and then diagnosed his injury as a lumbo-sacral strain, chronic strain, is that correct?

''A. Yes, you see this was only an impression, there was nothing to prove this, it was felt this was the most likely possibility.

''Q. At that time, there was no muscle spasm, at the time you examined him?

''A. No, sir.''

When questioned about the estimate of 5% permanent partial disability to the body as a whole and asked whether this included his old injury or not, the Doctor answered:

''A. No, sir, and as mentioned earlier, this doesn't take into consideration the mechanics or the functions of his back as a structure that he is going to have to use in the years ahead. This had to do primarily with being a rather generous estimate of what little loss of neurological function there might have been.''

Taking the foregoing testimony and all the evidence into account, we feel compelled to hold that there is evidence in the record from which the jury might reasonably have concluded that most, or nearly all of the disability and pain suffered by plaintiff and described by him in his testimony, was the result of the prior accident in which his leg was broken, and was not the result of the accident on which this suit is based.

Under these circumstances, and applying the well established rules with regard to jury verdicts and the weight we must give them when approved by the Trial Judge, we overrule the Assignments of Error and affirm the judgment of the Trial Court.

Affirmed.

Puryear and Todd, JJ., concur.