IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 4, 2004 Session

# LANCE LANIER v. HUBERT BANE, ET AL.

Appeal from the Circuit Court for Smith County
No. 4488B    Clara W. Byrd, Judge

No. M2000-03199-COA-R3-CV - **Filed June 8, 2004**

Plaintiff guest passenger appeals the trial court's denial of recovery in his action against his host driver for injuries suffered in a one car accident. The jury found him to be 50% responsible for his own injuries and upon such verdict the trial court entered judgment for the defendant. We affirm the action of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Alan Poindexter, Lebanon, Tennessee, for the Appellant, Lance Lanier.

Jacky O. Bellar, Carthage, Tennessee, for the Appellees, Hubert Bane and Joyce Bane, Co-Administrators of the Estate of Michael Bane, Deceased.

## OPINION

Plaintiff Lance Lanier was a passenger in a 1994 Lexis ES300 owned and operated by Michael Bane. At approximately 12:28 a.m., June 19, 1999, Michael Bane was operating his automobile on Highway 53 in Smith County, Tennessee. While attempting to negotiate a curve in the road he lost control of the automobile and collided with a rock bluff. Bane died from injuries suffered in the accident and passenger Lanier suffered personal injuries in the accident.

On September 30, 1999, Lanier filed suit against the Estate of Michael Bane in the Circuit Court for Smith County, Tennessee charging Bane with negligence and gross negligence in the operation of his automobile. The complaint asserted that Bane had failed to exercise due care in keeping his vehicle under control and upon the right half of the roadway in violation of Tennessee Code Annotated section 55-8-115(a), that he failed to drive his vehicle at a careful and prudent speed

exceeding the posted speed limit in violation of Tennessee Code Annotated section 55-8-152 and failed to drive his vehicle within his lane of travel in violation of Tennessee Code Annotated section 55-8-123, that he drove his automobile in willful and wanton disregard for the safety of persons in violation of section 55-10-205 and operated his vehicle under the influence of an intoxicant in violation of Tennessee Code Annotated section 55-10-401(a) and section 55-10-408(b). Lanier sought punitive damages in his original complaint, but on June 14, 2000, amended the complaint to delete his request for punitive damages and to delete any allegations that Bane was operating his vehicle under the influence of an intoxicant.

The co-administrators of the Estate of Michael Bane answered the complaint denying that Bane was at fault and asserting that Lanier was guilty of negligence in becoming a passenger in an automobile driven by one that he knew to be under the influence of an intoxicant. After trial on September 21, 2000, the trial court submitted the case to the jury using a special jury verdict form prepared by counsel for Lanier. This verdict form provided in its first question that the jury should determine the total amount of the Plaintiff's damages. The second and third interrogatories on the special jury verdict form provided:

> 2. WHAT PERCENTAGE OF FAULT DO YOU ATTRIBUTE TO EACH PERSON WHOSE CONDUCT CAUSED OR CONTRIBUTED <u>TO THE COLLISION</u>. YOUR ANSWERS MUST TOTAL 100%.
>
> MICHAEL BANE _____ %
> LANCE LANIER _____ %
>
> 3. STATE THE PERCENTAGE BY WHICH THE NEGLIGENCE OF LANCE LANIER, IF ANY, CAUSED OR CONTRIBUTED TO HIS OWN <u>INJURIES</u>. _____% ZERO TO ONE HUNDRED PERCENT.

The jury returned a verdict finding Plaintiff's total damages to be $51,723.11. The jury found Michael Bane to be 100% at fault for the collision of the automobile with the rock bluff. In answer to question 3 on the jury verdict form, the jury found that the negligence of Lanier contributed causally to his own injuries by 50%.

The trial court first found under the jury verdict that Plaintiff was entitled to recover one-half of his damages from Defendant but on its own motion reconsidered the judgment and entered an order on October 13, 2000, holding that under a proper construction of the jury verdict, Lanier was entitled to no damages. Lanier timely appealed.

Plaintiff brings these issues on appeal:

I. Did the trial court err in amending its prior order so that the final order of the trial court prohibited the plaintiff from any recovery.
II. Did the trial court err in not granting a motion for a new trial based upon the confusion between the special verdict form and the written jury instructions.

The problems in this case result from efforts in the trial court to apply the sound principles of *Hawks v. Grandstaff*, 36 S.W.3d 483 (Tenn.Ct.App. 2000) in a fact situation to which such principles are not applicable. *Hawks v. Grandstaff* involved a two vehicle multi-party negligence action applying comparative fault principles. The case at bar is a guest passenger action against his host driver for injuries resulting from a single car collision wherein the host driver lost control of his vehicle and collided with a rock bluff. The estate of the host driver defends the action by asserting that Plaintiff was responsible for his own injuries by voluntarily becoming a passenger in a vehicle driven by one that he knew to be intoxicated.[1]

The principles governing this case date back to the beginning of the automotive age and are well stated by Chief Justice Grafton Green in *Schwartz v. Johnson*, 152 Tenn. 586, 280 S.W. 32, 47 A.L.R. 323:

> It is apparent from the proof that the accident in which young Schwartz lost his life resulted from the negligent speeding of this car by the Johnson boy. The plaintiff therefore has made out a case for the jury, unless the suit be barred by the contributory negligence of his intestate, and we think the Court of Appeals rightly held that it was so barred.
> According to the undisputed proof, these boys had taken about twelve drinks of whisky each, during five or six hours preceding the accident. Both were intoxicated. Intoxication does not relieve one from contributory negligence. *Louisville, etc., R. Co. v. Hall*, 5 Tenn. Civ. App. 491; *Thompson on Negligence*, § 2935. When one gets into an automobile which is to be operated by a drunken driver, through the traffic of a populous city, such person takes his life in his hands. All the authorities are to the effect that such contributory negligence prevents a recovery by one taking such a chance, if he is injured as a result of the driver's negligence. *Lynn v. Goodwin*, 148 P. 927, 170 Cal. 112, L. R. A. 1915E, 588; *Jensen v. Chicago, M. & St. P. R. Co.*, 233 P. 635, 133 Wash. 208; *Winston's Adm'r v. City of Henderson*, 200 S.W. 330, 179 Ky. 220, L. R. A. 1918C, 646; *Kirmse v. Chicago, T. H. & S. E. R., Co.*, 127 N. E. 837, 73 Ind. App. 537; *Cunningham v. Erie R. Co.*, 121 N. Y. S. 706, 137 App. Div. 506.

*Schwartz v. Johnson*, 280 S.W. 32, 33 (Tenn. 1926); *see also Cole v. Woods*, 548 S.W.2d 640, 643 (Tenn. 1977).

The case at bar presents as a fact issue whether or not, or to what extent, Plaintiff was aware of the condition of the host driver.

If the evidence is such that reasonable minds may not differ as in *Schwartz*, the question is one of law and Plaintiff is barred from any recovery. *See Talbot v. Taylor*, 201 S.W.2d 1 (Tenn. 1935). If reasonable minds may differ as to extent of Plaintiff's knowledge of the host driver's

---

[1] How Mr. Lanier came to "un-know" in his amended complaint that which he knew so well in the original complaint about his host driver's intoxication makes for interesting reading.

condition, the case must go to the jury for determination. *Harvey v. Wheeler*, 423 S.W.2d 283 (Tenn.Ct.App. 1967).

The rules in *Schwartz, Talbot and Harvey* survived the advent of comparative fault in Tennessee subject only to the modification required by *McIntyre*. Such modification is best exemplified by *Larue v. 1817 Lake, Inc.* Prior to the comparative fault system implemented by *McIntyre*, Tennessee followed the common law rule of contributory negligence. Under this rule, "If the injury was caused by the plaintiff's conduct, or was the immediate result of the plaintiff's conduct, to which the wrong of the defendant did or did not contribute as an immediate cause, the plaintiff cannot recover, but must bear the result of his own negligence or conduct." *Nashville, etc. Railway Co. v. Norman*, 108 Tenn. 324, 333, 67 S.W. 479, 481 (Tenn.1902) (quoting *Railroad Co. v. Pugh*, 97 Tenn. 627, 37 S.W. 555, 556 (1896)). *See LaRue v. 1817 Lake, Inc.*, 966 S.W.2d 423 (Tenn.Ct.App. 1997).

Under this rule, any negligence of Plaintiff which directly contributed to the proximate cause of his injury, even if by comparison with the proximate negligence of Defendant it was the lesser contribution, would bar a recovery by the plaintiff. *McIntyre* modified the harshness of the contributory negligence rule. *LaRue v. 1817 Lake, Inc.* explains the effect of *McIntyre* on the *Schwartz, Talbot, Harvey* rule and the effect of the fault comparison on the contributory negligence rule:

> After directing verdicts for the dram shop defendants, the trial court found, as to the remaining defendant, that reasonable minds could reach only one conclusion–that LaRue was at least fifty percent at fault for his death, when compared with the fault of Brewer. We must disagree. Although this is admittedly a close question, we find the trial court should have allowed it to be decided by the jury.
>
> As the plaintiff points out, the facts of this case are very similar to those in *Silcox v. Coffee*, 1993 WL 350134 (Tenn.App.Sept. 15, 1993). In *Silcox*, the plaintiff was killed in an automobile accident after both he and the defendant driver had been drinking heavily. The defendant's blood alcohol level was 0.39 and plaintiff's was 0.37. *Id*. at **1. The court stated the following:
>
>> Our inquiry is whether viewing the evidence in the plaintiff's favor, the evidence can reasonably support a conclusion that [plaintiff's] decision to ride with an intoxicated driver did not account for 50 percent or more of the proximate cause of his death. *The reasonableness of a plaintiff's decision to encounter this risk is a factual determination to be determined by the trier of fact . . .* In the case at bar, the jury determined that [plaintiff's] death was caused 40 percent by his own negligence. This conclusion necessarily involves a consideration of the reasonableness of [plaintiff's] decision to ride with the defendant. There is ample evidence to support that [plaintiff's] decision to ride with defendant was unreasonable. We cannot say, however, that the evidence does not establish a basis from

> which the jury could have concluded that [plaintiff's] decision accounted for less than 50 percent of the proximate cause of his death. Accordingly we find no error with the trial court's denial of defendant's motion for a directed verdict and his motion for a new trial.

*Id.* at **5 (emphasis added; citation omitted).

*LaRue v. 1817 Lake, Inc.*, 966 S.W.2d 423, 426-27 (Tenn. Ct. App. 1997).

The problem with the jury verdict form used in this case is that it sends to the jury both a "comparative fault" and "comparative negligence question." The entire case at bar is a "comparative negligence" case rather than a "comparative fault" case as these terms have been employed by the courts in implementing the system envisioned in *McIntyre*. As explained in *Owens v. Truckstops of America*, 915 S.W.2d 420 (Tenn. 1996), these terms delineate two separate concepts.

> Previously, the terms "comparative negligence" and "comparative fault" have been used somewhat interchangeably to include the principles governing the apportioning of damages between a plaintiff and defendants, as well as between defendants. *See McIntyre v. Balentine*, 833 S.W.2d 52, 56 (Tenn. 1992) (adopts a system of "comparative fault" in place of the common law doctrine of "contributory negligence" to determine whether a plaintiff may recover from a defendant); *Cook v. Spinnaker's of Rivergate*, 846 S.W.2d 810, 811 (Tenn. 1993) (finding that the plaintiff failed to previously raise the issue of whether the doctrine of "comparative negligence" applied in determining whether the defendant was liable to the plaintiff); *Bervoets v. Harde Ralls Pontiac-Olds, Inc.*, 891 S.W.2d 905, 908 (Tenn. 1994) (actions for contribution between defendants will be tried under the principles of "comparative fault"). However, each of these terms may be used to express a distinct meaning.
>     The term "comparative negligence" is defined as the measure of the plaintiff's negligence in percentage terms used for the purpose of reducing the plaintiff's recovery from the defendant in proportion to the percentage of negligence attributed to the plaintiff. It encompasses the system of determining the damages attributable to the plaintiff as against the defendants which this Court adopted when it abandoned the "outmoded and unjust common law doctrine of contributory negligence." *McIntyre v. Balentine*, 833 S.W.2d at 56;

*Owens v. Truckstops of America*, 915 S.W.2d 420, 425-26 n. 7 (Tenn. 1996).

This distinction is further refined in footnote in *Coln v. City of Savannah*, 966 S.W.2d 34, (Tenn. 1998).

> We have since distinguished comparative negligence from comparative fault. The former is the measure of the plaintiff's negligence in percentage terms that reduces the plaintiff's recovery. The latter encompasses the determination of how

to apportion damage recovery among multiple or joint tortfeasors according to the percentage of fault attributable to each.

966 S.W.2d 34, 40 n. 6.

This distinction was clearly recognized in *Grandstaff v. Hawks*, 36 S.W.3d 482 (Tenn.Ct. App. 2000) where in footnote this Court observed:

The Tennessee Supreme Court has distinguished between "comparative negligence" and "comparative fault." *See Coln v. City of Savannah*, 966 S.W.2d at 40 n. 6; *Owens v. Truckstops of Am.*, 915 S.W.2d at 425-26 n. 7. Comparative negligence measures the plaintiff's negligence for the purpose of reducing the plaintiff's recovery. Comparative fault encompasses the allocation of recovery among multiple or joint tortfeasors according to their percentage of fault. The Court made this distinction on the theory that a plaintiff's recovery may only be reduced because of the plaintiff's negligence, whereas a defendant's liability may be based on theories of liability other than negligence, for example, strict liability. *Owens v. Truckstops of Am.*, 915 S.W.2d at 426 n. 7.

*Grandstaff*, 36 S.W.3d 482, 491 (Tenn.Ct.App. 2000).

When the principles of *McIntyre, Owens* and *Coln*, as those principles are recognized in *Grandstaff* are applied to this case involving a single car accident with guest passenger suing his host driver, the problem with the verdict form lies with the submission of question two to the jury concerning comparative fault for the collision. There was no comparison of fault to be made. As between the passenger Lanier and the host driver Bane, it is neither alleged nor proved that Lanier had any control over the vehicle. The "fault" issue could only be cast in terms of whether or not the driver Bane was at fault in the collision of the car with the rock bluff.[2] It would have been better practice in retrospect to have submitted the verdict form to the jury with only questions one and three to be answered since question two was immaterial to the decision. However, since the jury found in answer to question two that Bane was 100% at fault for the collision, any confusion that might have been caused by the comparative fault question is irrelevant.

This is not a case where a third party injured in an automobile accident seeks to hold a guest passenger jointly liable with his host driver for injuries to the third party. Liability in such a case would be measured by the degree to which the passenger had a right to control the actions of the driver. *Wilson v. Moudy,* Pi 123 S.W.2d 828 (Tenn.Ct.App. 1939); *Pikeville Fuel Co. v. Marsh*, 232 S.W.2d 789 (Tenn.Ct.App. 1950). If the guest passenger has no duty or right to control the actions

---

[2] Under the proof in this case no rational trier of fact could have reached any other conclusion than that Bane was 100% at fault for the collision of his car with the rock bluff. By Lanier's testimony Bane was speeding, drinking, and driving erratically immediately before the accident. By the testimony of every other witness, Bane was thoroughly intoxicated when Lanier got into the car. The only question that was really left for the jury to determine on the evidence was the extent to which Lanier was aware of the condition of his host driver.

-6-

of his host driver he is not liable for third party injuries even under the most egregious circumstances. *Cecil v. Hardin*, 575 S.W.2d 268 (Tenn. 1978).

The painstaking analysis in *Grandstaff* that is to be applied in resolving the problems inherent in the necessary merger of "comparative negligence" and "comparative fault" in multiple-car, multiple-party cases has no bearing on the outcome of this case. There is no "fault" to be compared. As in *LaRue* and *Silcox*, the only comparison to be made is comparative negligence in determining responsibility between the host driver and the passenger for injuries sustained by the passenger.

The jury was called upon to address question three which correctly stated the determinative issue.

"3.      State the percentage by which the negligence of Lance Lanier, if any, caused or contributed to his own <u>injuries</u>. _____ % zero to one hundred percent."

When, as here, the jury in responds to this question by filling in the blank at 50%, the rule, as modified in *McIntyre*, compels a verdict for the defendant. 833 S.W.2d 52 at 57 (Tenn. 1992).

While the trial court did not direct a verdict at the conclusion of all the proof as to the 100% fault of Bane for the accident, no reasonable trier of fact could have found to the contrary. First of all, Plaintiff alleged such fault and, being the only witness to the accident, testified in support of his allegations:

Q      What happened after you got in the car?
A      We pulled out of the school parking lot. And as we were going through Gordonsville he was kind of going a little fast and I asked him to slow down, and he did. He slowed down. And we went on through Gordonsville and everybody usually turns around about McDonald's. You know, they just make circles, like a hangout in Gordonsville.
       And as we went through - - as went toward McDonald's we passed Mark and Eric Byrd going back the other way. And I just asked him, I said, you know, just pull over and let me get in the car with them. I just want to go back home. And he said, you know, no, there's not enough room, that's a truck. He goes, you can just ride with me and if all else fails you can just stay the night with me. So I - - I said okay. And when we made it to about Cumberland Bank and he just - - he kicked it.
Q      What do you mean kicked it?
A      He just accelerated the car. I mean, floored it.
Q      Okay.
A      Started, you know, increasing his speed. And, you know, I looked over at the speedometer and he was getting on up there, and I asked him to, you know, slow down. And I think in a way he got a charge out of it or, you know, kind of thought it was kind of funny at first, and kept just going real fast. And I asked him once more as he was going toward the T and T to slow down. And it was a couple of minutes after that, that's when we come into the curve.

Q       What curve are you talking about?

A       It's the curve right past, you know, down from T and T, right above Donoho Muffler on 53.

Q       All right. What happened?

A       When we went in the curve, his car tires slightly went, you know, over into the other lane. And when it did he snatched the wheel to try to correct itself and the car went back end, hydroplaned or, you know, lost control and we spun. When we did, I reached up beside my head and grabbed the bar beside my head and held onto it.

The car spun and, I mean, everything was going on so quick, I don't really, you know, know how many times we flipped or anything like that. But I know we hit the wall and the car ended up on the roof and we slid and when it was sliding my legs were partially ejected out of the window.

No evidence is ever offered to the contrary. The only reason given by the trial court for not directing a verdict is the refusal of counsel for Bane to stipulate the 100% fault of Bane for the accident. The 100% fault of the host driver Bane for the accident being indisputable, the only question remaining, outside of the alleged confusion of the jury as to the verdict form, is whether or not there is material evidence in the record to support the jury's assessment that the negligence of Lanier was 50% causally responsible for his own injures.

This finding depends under the principles of *Schwartz, Talbot* and *Wheeler* upon the extent to which Lanier was aware of the intoxicated condition of Bane when he chose to become a guest passenger in the automobile. Not only does material evidence support the finding of the jury but, indeed, the evidence, both as to the intoxication of Bane and as to the knowledge of Lanier, is overwhelming. The blood alcohol level of Michael Bane after the accident was 0.158.[3] The proof shows that Bane had been drinking heavily throughout the evening before Lanier got into his car. The witness Kayla Slagle testified that on the evening before the accident she was with Michael Bane and was driving his automobile because "we didn't want him to drive because he'd been drinking."

The witness Ashley Duke testified:

Q       I'm going to get right to the point with you. On June 19th, 1999, do you remember an automobile accident between Lance - - involving Lance Lanier and Michael Bane?

A       Yes.

Q       Okay. That night, had you seen - - had the occasion to see Michael Bane?

A       Yes.

Q       Tell the Court what kind of condition he was in.

---

[3]   Tennessee Code Annotated section 55-10-408(b), at the time of the accident in this case, established a presumption that a person's driving was impaired if his or her blood alcohol level was .10 % or more.

. . . .

[A]     He was drinking that night.  He was pretty drunk.

The witness Brian Nixon testified:

Q       And if you would, just tell the ladies and gentlemen of the jury when you first saw Michael the night before he got killed?
A       The night before.
Q       The night he got killed.  Actually, he got killed a little after midnight and you were together a little before as I understand it?
A       I was with him that whole evening.
Q       Okay.
A       And we rode around - -
        THE COURT:          You probably need to speak into the microphone there.
        THE WITNESS:          We rode around, went out to Defeated to Caprice and drank a 40-ounce beer on the way out there.  And stopped at T and T on the way back from going out there.  T and T is in Gordonsville, and got another one.  And he drank that and I drank one too.  And we rode around for a little while and then the girls got with us about 10:00.  And they was with us until - - I was with them until 12:00.  I had to get up and go to work the next morning, so I got out at 12:00.

BY MR. JACKY BELLAR:
Q       Who was driving when the girls got with you?
A       Kayla drove on the way back from his apartment and Marlena drove on the way over there.
Q       Why were they driving?
A       Because we was intoxicated.
Q       You don't deny that you were drinking pretty heavy and so was Michael, was he not?
A       Uh-huh.  (Affirmative.)
Q       Also, that night - - I'm not going to ask about you, did Michael smoke any pot?
A       Yes.
Q       How many joints did he smoke?
A       I'm going to say two.
Q       Was there any doubt in your mind, and I know you don't want to be here today, that Michael was under the influence when you left him?
A       Yes, sir.
Q       He clearly was, wasn't he?
A       Uh-huh.  (Affirmative.)

The accident in this case occurred at 12:23 a.m. on June 19, 1999. By the testimony of the witness Nixon, he was with Bane until about 25 minutes before the fatal accident.

As to Mr. Lanier's knowledge concerning Bane's intoxicated condition, the jury could certainly infer that what was obvious to everyone else would have to be obvious to Mr. Lanier. Not only did Mr. Lanier allege in his original complaint that Bane was under the influence of an intoxicant, but testified that Bane was drinking in his presence at the time Lanier got into the car.

> Q     Now, he was there drinking what you call a 40. Tell the jury again what a 40 is.
> A     A 40 is - - it's beer.
> Q     What size beer?
> A     Forty ounces.
> Q     I assume this was a bottle?
> A     Yes.
> Q     And you were there when Mr. Bane threw it in the parking lot, smashed it on the parking lot?
> A     Yes, I think he was trying to throw it to the grass, but it smashed in the parking lot.

The verdict of the jury is amply supported by the evidence.

Defendant complains that the jury instructions when coupled with the special jury verdict form which his counsel had prepared confused the jury. To the contrary, it would appear that the jury understood the issues better than anybody in the courtroom.

As this Court has held:

> We have a duty to uphold a jury's verdict whenever possible. *See Henshaw v. Continental Crescent Lines, Inc.*, 499 S.W.2d 81, 86 (Tenn.Ct.App. 1973); *Templeton v. Quarles*, 52 Tenn. App. 419, 432, 374 S.W.2d 654, 660 (1963). In doing so, we must give effect to the jury's intention, *Areata Graphics Co. v. Heidelberg Harris, Inc.*, 874 S.W.2d 15, 27 (Tenn.Ct.App. 1993), as long as that intention is permissible under the law and ascertainable from the phraseology of the verdict. *See Brisco v. Allison*, 200 Tenn. 115, 125-26, 290 S.W.2d 864, 868 (1956); *Crafton v. Edwards*, 58 Tenn. App. 606, 613, 435 S.W.2d 486, 490 (1968). Accordingly, we should not set aside a jury's verdict because of an erroneous instruction unless it affirmatively appears that the erroneous instruction actually misled the jury. *See Carney v. Coca-Cola Bottling Works*, 856 S.W.2d 147, 150 (Tenn.Ct.App. 1993); *Helms v. Weaver*, 770 S.W.2d 552, 553 (Tenn.Ct.App. 1989).

*Grandstaff v. Hawks*, 36 S.W.3d 482, 497 (Tenn.Ct.App. 2000).

The record discloses an extensive discussion between the court and counsel about the verdict form and the instructions which the court proposed to use. Counsel for Plaintiff insisted that the jury verdict form used in this case, which he had prepared, comported with *Grandstaff*. It was counsel for Defendant who objected to the use of the form. Neither counsel objected to any specific provision of the proposed charge to the jury. Instructions to the jury are not required to be perfect but rather to be such as can be understood by laymen. *Ingram v. Earthman*, 993 S.W.2d 611 (Tenn.Ct.App. 1998). We are satisfied that the jury understood that it was to compare the negligence of the guest passenger to that of the host driver in determining the issues between the parties. The jury responded to question 3 of the special jury verdict form in a manner that mandated judgment for Defendant.

The judgment of the trial court is in all respects affirmed and costs of this cause are assessed to Defendant.

 

 

 

_____
WILLIAM B. CAIN, JUDGE