# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## JEAN MARIE GRANDSTAFF, ET AL. v. WILLIAM H. HAWKS, JR., ET AL.

**Direct Appeal from the Circuit Court for Wilson County**
No. 9441     Bobby Capers, Judge

---

**No. M1998-00909-COA-R3-CV - Decided May 31, 2000**

---

This appeal involves an automobile collision on the Carthage Highway in Wilson County in which one of the drivers was killed and the driver of the other vehicle and his passenger were injured. The passenger filed separate negligence actions against the drivers in the Circuit Court for Wilson County. These suits were consolidated with the suit involving the two drivers' negligence claims against each other. After being instructed to allocate the fault among both drivers and the passenger, a jury apportioned 49% of the fault to each driver and 2% of the fault to the passenger. In response to post-trial motions filed by the two drivers and the passenger's uninsured motorist carrier, the trial court determined that it had erred by instructing the jury to include the passenger in the allocation of fault. Instead of granting a new trial, the trial court vacated the judgments for the two drivers and remitted the passenger's damages from $138,218.37 to $75,000. On this appeal, the passenger's uninsured motorist carrier takes issue with the trial court's failure to order a new trial; while the passenger takes issue with the remittitur. While we have determined that the trial court's instructions regarding the allocation of fault were incorrect, we conclude that the error, in light of the circumstances of this case, did not affect the judgment. We have also concluded that the evidence supports the suggested remittitur. Accordingly, we affirm the judgment ordering the passenger's uninsured motorist carrier to pay the passenger $37,500.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

Koch, J., delivered the opinion of the court, in which Cantrell, P.J., M.S. and Cain, J. joined.

Paul M. Buchanan, Nashville, Tennessee, for the appellant, State Farm Mutual Insurance Company.

Neal Agee, Jr., Lebanon, Tennessee, for the appellee, Jean Marie Grandstaff.

## OPINION

On August 28, 1994, two vehicles collided near the intersection of Carthage Highway and Spring Creek Road in Wilson County. One vehicle, a maroon 1993 Chevrolet pickup truck driven by Jack Dempsey Forrest, was traveling west on Carthage Highway. The other vehicle, a white 1987 Lincoln Town Car being driven by 81-year-old William H. Hawks, was turning onto Carthage

Highway after stopping at a stop sign on Spring Creek Road. Mr. Hawks was killed, and Mr. Forrest and his passenger, Jean Marie Grandstaff, were injured. Ms. Grandstaff struck the windshield of Mr. Forrest's truck and sustained cuts and bruises on her face, shoulder, and hip. The force of the collision also aggravated a pre-existing lower back injury that had rendered Ms. Grandstaff unable to work since December 1992. Mr. Forrest later died for reasons unrelated to the collision.[1]

Mr. Hawks was insured by Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers"). Mr. Forrest was not insured, but Ms. Grandstaff was insured by State Farm Mutual Insurance Company ("State Farm"). Both Mr. Hawks' and Ms. Grandstaff's insurance policies provided uninsured motorist coverage.

Ms. Grandstaff filed suit against Mr. Hawks in the Circuit Court for Wilson County, giving appropriate notice to State Farm as her uninsured motorist carrier. Thereafter, Mr. Forrest sued Mr. Hawks alleging that Mr. Hawks had run a stop sign and had failed to yield the right-of-way. Mr. Hawks counterclaimed against Mr. Forrest for speeding. After Ms. Grandstaff sued Mr. Forrest, the trial court consolidated these actions for trial. Neither Mr. Hawks nor Mr. Forrest claimed that Ms. Grandstaff was in any way responsible for the collision. The lawyers for Messrs. Hawks and Forrest and for Ms. Grandstaff took primary responsibility for conducting the litigation. State Farm, exercising its statutory prerogatives, chose to remain an unnamed defendant and limited its participation at trial.

Ms. Grandstaff sought a directed verdict at the close of the proof because neither Mr. Forrest nor Mr. Hawks had presented evidence showing that her conduct caused the collision or contributed to her injuries. Mr. Hawks opposed the motion on the ground that Ms. Grandstaff, as a guest passenger, was responsible, at least in part, for her own injuries because she did not tell Mr. Forrest to slow down. The trial court overruled Ms. Grandstaff's motion and instructed the jury to apportion all the fault among Messrs. Forrest and Hawks and Ms. Grandstaff. The jury returned a verdict assessing each party's damages[2] and allocating the parties' fault as follows: 49% to Mr. Hawks, 49% to Mr. Forrest, and 2% to Ms. Grandstaff. Thereafter, on April 14, 1997, the trial court entered a judgment on the verdict, directing Mr. Hawks to pay Mr. Forrest $68,741.26[3] and to pay Ms.

---

[1]For simplicity, this opinion will refer to the representatives of Mr. Forrest's estate as "Mr. Forrest" and the representatives of Mr. Hawks' estate as "Mr. Hawks."

[2]The jury determined that Mr. Hawks' damages were $207,277.68, that Mr. Forrest's damages were $140,288.28, and that Ms. Grandstaff's damages were $138,218.37.

[3]49% × $140,288.28 = $68,741.26.

Grandstaff $67,727.[4]  The judgment also directed Mr. Forrest to pay Mr. Hawks $101,541.56[5] and to pay Ms. Grandstaff $67,727.[6]

Mr. Hawks and State Farm filed post-trial motions taking issue with the jury's inclusion of Ms. Grandstaff in the allocation of fault and also seeking a remittitur of Ms. Grandstaff's damages. On May 13, 1997, after Ms. Grandstaff settled her claims against Mr. Hawks, Messrs. Hawks and Forrest filed a joint motion for judgment notwithstanding the verdict or to alter or amend the judgment. The drivers agreed in the agreed order attached to their motion "that the fault of Jack Dempsey Forrest and the fault of William H. Hawks, Sr. is [sic] equal and that any comparative fault of Jean Marie Grandstaff should not have been included in the determination [of fault] by the jury . . .." On May 16, 1997, without affording either Ms. Grandstaff or State Farm an opportunity to respond to the motion, the trial court entered the drivers' "amended agreed order" dismissing with prejudice the claims by Messrs. Hawks and Forrest against each other "their respective faults having been found to be equal."[7]  Both Ms. Grandstaff and State Farm quickly objected to the May 16, 1997 order, insisting that it should only have reflected that Messrs. Hawks and Forrest had settled their claims against each other.

Mr. Hawks later withdrew his post-trial motion for a new trial or for a remittitur, leaving only Ms. Grandstaff's claims against Mr. Forrest unresolved. State Farm continued to press its motion for a new trial and a remittitur. On June 17, 1997, the trial court denied State Farm's motion for a new trial after conceding that its instructions to consider Ms. Grandstaff in the allocation of fault "presented unresolved and problematic issues" and that "any perceived shortcoming in the charge to the jury should be addressed, if at all, to the Court of Appeals." The trial court also concluded that the jury's award of damages to Ms. Grandstaff was "excessive" and directed State Farm to provide a transcript of her treating chiropractor's testimony. On August 8, 1997, the trial court entered an order suggesting a remittitur of Ms. Grandstaff's damages to $75,000. Ms. Grandstaff accepted the remittitur under protest.

## I.

---

[4] $49\% \times \$138,218.37 = \$67,727$.

[5] The trial court miscalculated this award.  $49\% \times \$207,277.68 = \$101,566.06$.

[6] $49\% \times \$138,218.37 = \$67,727$.

[7] In one of its later responses, State Farm informed that trial court that "[t]he Hawks Estate has received $60,000.00 in compensation for this Order. In exchange for this payment, the Hawks Estate has received a release of liability for any subrogation interest Tennessee Farmers Mutual Automobile Insurance Company may have against it and Mr. Williams [Mr. Forrest's attorney] has been paid a 'defense fee' by Tennessee Farmers."

### THE ADMISSIBILITY OF NANCY OWENS' TESTIMONY

We will first consider State Farm's challenge to the admissibility of the only evidence tending to establish that Mr. Forrest was speeding immediately before the accident. State Farm argues that the trial court erred by permitting the introduction of this evidence because it involved events that were not sufficiently linked in time and place with the collision. We have determined that State Farm cannot raise this issue on appeal because it failed to make a timely objection to this evidence at trial.

Nancy Sue Owens, a registered nurse, was among the first persons to arrive at the scene of the collision. She had been driving from Carthage toward Lebanon on Carthage Highway at between sixty and sixty-five miles per hour when a white automobile going in the same direction overtook and passed her. Approximately three minutes later, she topped a hill and saw the scene of the collision - a white automobile on the left side of the road and a maroon truck stopped in her lane of traffic. She also observed a man lying on the left side of the road. Ms. Owens stopped to render aid until the persons involved in the collision were transported by ambulance to the hospital. She believed that the white automobile that had passed her earlier was the same automobile that was involved in the collision because her mother-in-law drove a very similar automobile.

At the beginning of the trial on March 31, 1997, State Farm's lawyer, on behalf of his client and Mr. Forrest, requested the trial court to prevent Mr. Hawks from eliciting from any witness testimony suggesting that Mr. Forrest was speeding when the collision occurred. The motion was obviously directed toward Ms. Owens. The court responded to the motion as follows:

> Well, see, that's three minutes previously that in fact he was speeding. Well, what we'll do is we'll hear the testimony of this witness prior to their being presented to the jury to see what the Court concludes. But right now, three minutes straight highway. Let's see what she's got to say first. But right now I'm inclined to let it in.

In the discussion that followed, the trial court reiterated: "Well, what I'm saying is that, in all candor, it does show a continuous course of action. But, anyway, we'll see what they've got to say."

Despite his earlier objection to Ms. Owens' testimony, Mr. Forrest's lawyer called Ms. Owens as his first witness on the second day of trial. The record does not indicate whether the lawyer for State Farm was present during Ms. Owens' testimony. Without objection, Ms. Owen testified that three minutes before the accident, a white automobile she believed to be Mr. Forrest's passed her while she was driving between sixty and sixty-five miles per hour and that this automobile was the same automobile involved in the collision she encountered approximately three minutes later. In its motion for new trial, State Farm complained that the trial court erred by admitting Ms. Owens' testimony regarding the rate of speed of the white automobile that passed her. The trial court denied that ground of the motion for a new trial, and now State Farm raises the same issue on appeal.

Objections to the introduction of evidence must be timely and specific. *See Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 702 (Tenn. Ct. App. 1999). An evidentiary objection will be considered timely either if it is made in a motion in limine or if it is made at the time the objectionable evidence is about to be introduced. *See Wright v. United Servs. Auto. Ass'n*, 789 S.W.2d 911, 914 (Tenn. Ct. App. 1990). A party who files an unsuccessful motion in limine need not renew the motion when the evidence is introduced as long as the trial court "clearly and definitively" overruled the motion in limine when it was made. *See State v. Brobeck*, 751 S.W.2d 828, 833-34 (Tenn. 1988); *State v. McGhee*, 746 S.W.2d 460, 462 (Tenn. 1988); *Wright v. United Servs. Auto. Ass'n*, 789 S.W.2d at 914. If, however, the trial court has not "clearly and definitively" acted on the motion, the moving party must renew the motion contemporaneously with the introduction of the objectionable evidence. Failure to renew the motion will preclude the moving party from taking issue on appeal with the admission of the evidence.

The trial court did not clearly and definitively overrule State Farm's motion in limine to prevent Ms. Owens from testifying that an automobile like Mr. Forrest's passed her at a high rate of speed a short time before the collision. Thus, either State Farm or someone acting in State Farm's interest should have renewed the objection during Ms. Owens' testimony. No such motion was made, either by State Farms' lawyer or by Ms. Grandstaff's lawyer.[8]

A party who invites or waives error, or who fails to take reasonable steps to cure an error, is not entitled to relief on appeal. *See* Tenn. R. App. P. 36(a), cmt. a. Failure to object evidence in a timely and specific fashion precludes taking issue on appeal with the admission of the evidence. *See Ehrlich v. Weber*, 114 Tenn. 711, 717-18, 88 S.W. 188, 189 (1905); *Pyle v. Morrison*, 716 S.W.2d 930, 936 (Tenn. Ct. App. 1986); Tenn. R. Evid. 103(a)(1). Accordingly, because State Farm did not renew its objection to Ms. Owens' testimony regarding Mr. Forrest passing her shortly before the accident, we decline to address whether this evidence was admissible.

## II.
### THE ALLOCATION OF FAULT

State Farm also insists that the trial court erred by instructing the jury to allocate the fault for the accident among Messrs. Hawks and Forrest and Ms. Grandstaff. Rather than defending the trial court's allocation-of-fault instructions, Ms. Grandstaff asserts that State Farm should not be permitted to use this error to obtain a new trial because State Farm did not object to the instructions and because State Farm was not prejudiced by the instructions. We have determined that State Farm may raise this issue because it challenged the instructions in a timely manner and that the manner

---

[8]While State Farm's lawyer was present in the courtroom on March 31, 1997 when the trial began, the record does not indicate whether he was still present on April 1, 1997 when Ms. Owens was called to the stand. If he was present, he is directly responsible for failing to object to this testimony. If he was absent, he was likewise bound by Ms. Grandstaff's failure to object because he would have entrusted all trial decisions to Ms. Grandstaff's lawyer. *See Beal v. Doe*, 987 S.W.2d 41, 48 (Tenn. Ct. App. 1998).

in which the trial court instructed the jury to allocate fault for the collision was erroneous. However, we have also determined that the erroneous instructions do not warrant a new trial because, under the facts of this case, they, more likely than not, did not affect the jury's allocation of fault.

**A.**

Ms. Grandstaff argues that State Farm's objection to the trial court's instructions regarding the allocation of fault should meet the same fate as its objection to Ms. Owens' testimony. She asserts that State Farm should not be permitted to take issue with the instructions because it did not object to the instructions during the trial. State Farm has the better argument here, even though it neither objected to the instructions nor offered correct instructions at trial. It preserved its right to challenge the instructions on appeal by raising the issue in its motion for a new trial.

As we pointed out in the preceding section, parties who invite or waive errors at trial will not be entitled to invoke these errors to seek relief on appeal. *See* Tenn. R. App. P. 36(a) & cmt. a. The chief exception to this rule involves jury instructions. Trial courts have the duty to give accurate jury instructions. *See Ladd v. Honda Motor Co.*, 939 S.W.2d 83, 93 (Tenn. Ct. App. 1996). Accordingly, Tenn. R. Civ. P. 51.02 provides that a party may seek a new trial because of an inaccurate instruction, even if it did not object to the instruction at trial. *See Rule v. Empire Gas Corp.*, 563 S.W.2d 551, 553 (Tenn. 1978).[9]

The issue State Farm seeks to raise on this appeal involves an error, as opposed to an omission, in the instructions. It argues that the trial court erroneously instructed the jury to include Ms. Grandstaff in its allocation of fault. While State Farm did not object to these instructions during the trial, it took issue with them in its motion for new trial. Accordingly, it has preserved this error as required by Tenn. R. Civ. P. 51.02, and it can raise this issue on appeal.

**B.**

After all the parties rested, Ms. Grandstaff requested a directed verdict because neither Mr. Forrest nor Mr. Hawks had presented evidence that she was in any way responsible for the collision. In his opposition to the motion, Mr. Hawks asserted that Ms. Grandstaff should remain in the case because of the duty she owed to herself to exercise reasonable care for her own safety.[10] Accordingly, the trial court instructed the jury that

---

[9]This exception applies only to erroneous instructions; it does not relieve a party of the responsibility to bring the trial court's attention to material omissions in the instructions. *See Rule v. Empire Gas Corp.*, 563 S.W.2d at 553; *Henry County Bd. of Educ. v. Burton*, 538 S.W.2d 394, 397-98 (Tenn. 1976); *Jones v. Tennessee Farmers Mut. Ins. Co.*, 896 S.W.2d 553, 556 (Tenn. Ct. App. 1994).

[10]*See Harrison v. Pittman*, 534 S.W.2d 311, 315 (Tenn. 1976); *Rollins v. Winn Dixie*, 780 S.W.2d 765, 768 (Tenn. Ct. App. 1989).

a passenger in a motor vehicle has a duty to use the care that a reasonable person riding under similar circumstances would use. A passenger has a duty to take positive measures to protect himself from danger only when it is apparent that she can no longer rely upon the driver for protection, as when the driver by his conduct shows that he is incompetent to drive or when the driver is unmindful of or does not know of a danger known to the passenger, and then only if the passenger becomes aware of the danger at a time and under circumstances when she could have prevented the harm.

The motor vehicle in which the passenger in this case was riding at the time of the accident was being driven by Mr. Forrest. With respect to the claim of Mrs. Grandstaff against Mr. Forrest and Mr. Hawks, any negligence on the part of the driver Mr. Forrest is not chargeable to her.

Thereafter, the trial court instructed the jury to assign a percentage of fault, if any, to any or all of the parties, with the total equaling one hundred percent. To assist the jury, the trial court provided a verdict form containing two questions. The first question was "Considering all the fault at 100%, what percentage of the total fault is chargeable to each of the following persons?" Following the question, the form listed Mr. Forrest, Mr. Hawks, and Ms. Grandstaff and provided a blank for filling in the percentage of fault allocated to each. The second question was "Without considering the percentage of fault in Question 1, whay [sic] total amount of damages, if any, do you find were sustained by the following parties." The form again listed the names of Mr. Forrest, Mr. Hawks, and Ms. Grandstaff followed by lines where their damages could be written.

Acting in accordance with the trial court's instructions, the jury allocated 49% of the fault to Mr. Hawks, 49% of the fault to Mr. Forrest, and 2% of the fault to Ms. Grandstaff and filled in the blanks on the verdict form accordingly. The jury also determined that Mr. Forrest's damages were $140,288.28, that Mr. Hawks' damages were $207,277.68, and that Ms. Grandstaff's damages were $138,218.37 and included these amounts on the verdict form.

## C.

The Tennessee Supreme Court adopted the current modified comparative fault scheme in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992). Its intention was to abolish "the out-dated doctrine of contributory negligence," *Turner v. Jordan*, 957 S.W.2d 815, 821 (Tenn. 1997), and to replace it with a set of principles that would (1) enable plaintiffs to recover fully for their injuries, (2) fairly allocate the liability among the defendants, (3) conserve judicial resources, and (4) eliminate inconsistent judgments. *See Samuelson v. McMurtry*, 962 S.W.2d 473, 476 (Tenn. 1998). Thus, as the Court frequently reminds us, the conceptual underpinnings of its modified comparative fault scheme are fairness, consistency, and efficiency. *See, e.g., White v. Lawrence*, 975 S.W.2d 525, 532 (Tenn. 1998); *Coln v. City of Savannah*, 966 S.W.2d 34, 40 (Tenn. 1998); *Owens v. Truckstops of Am.*, 915 S.W.2d 420, 424 (Tenn. 1996).

The comparative fault scheme was a work-in-progress when it was first ordained in 1992. *See McIntyre v. Balentine*, 833 S.W.2d at 57. It remains a work-in-progress in many respects today even though eight years have passed. While the Tennessee Supreme Court continues to work through precisely how its comparative fault scheme affects traditional legal principles surrounding tort litigation, many questions await definitive answers. Some of these questions involve multi-party litigation. This case involves one such question.

*McIntyre v. Balentine* was a typical two-party motor vehicle collision case. One driver sued the other driver for negligence, and the other driver denied that he was negligent and asserted that the plaintiff driver was contributorially negligent. The jury returned a verdict for the defendant after hearing evidence that both drivers had been drinking and that the plaintiff driver had been speeding. The Tennessee Supreme Court vacated the judgment and remanded the case for another trial based on its newly minted comparative fault principles. To assist the parties, the Court provided suggested jury instructions and a suggested verdict form suitable for two-party litigation only. *See McIntyre v. Balentine*, 833 S.W.2d at 59-60. The Court also invited the Committee on Civil Pattern Jury Instructions to promulgate new standard jury instructions and pointed out that modifications to its two-party instructions would be required for "more complex litigation." *See McIntyre v. Balentine*, 833 S.W.2d at 58, 59.

The Committee on Civil Pattern Jury Instructions responded to the Tennessee Supreme Court's invitation by issuing proposed instructions and verdict forms intended to replace the suggested instructions and forms appended to *McIntyre v. Balentine. See* 8 Committee On Civil Pattern Jury Instructions, Tennessee Pattern Jury Instructions T.P.I. 3-Civil 3.01 - 3.63 (3d ed. 1997) ("T.P.I. 3-Civil"). In addition to a two-party verdict form, *see* T.P.I. 3-Civil 3.59, the Committee also prepared a verdict form applicable to two-vehicle collision cases involving two drivers and two passengers. *See* T.P.I. 3-Civil 3.61. We have determined that this instruction is not satisfactory because it fails to differentiate between a passenger's fault that was a cause of the collision and a passenger's fault that only contributed to the passenger's injuries.

Under Tennessee's modified comparative fault scheme, a jury must consider causation in fact when comparing fault. *See Eaton v. McClain*, 891 S.W.2d 587, 592 (Tenn. 1994) (holding that the percentage of fault assigned to a party depends on the "relative closeness of the causal relationship" between the conduct and the injury).[11] Other jurisdictions and authorities that consider causation

---

[11]Commentators are divided on this issue. *See* Henry Woods & Beth Deere, *Comparative Fault* § 5:5, at 119 (3rd ed. 1996 & Supp. 1999); 4 Fowler V. Harper et al., *The Law of Torts* § 22.16, at 396-402 (2d ed. 1986 & Supp. 2000). For example, Prosser argues that, "once causation is found, the apportionment must be made on the basis of comparative fault, rather than comparative contribution [to the injury or accident]." William L. Prosser, *Comparative Negligence*, 51 Mich. L. Rev. 465, 481 (1953). Other commentators and much of the case law support the view that causation is at least a factor to consider in apportioning fault. *See* Henry Woods & Beth Deere, *Comparative Fault* § 5:5 at 119. *See e.g.*, *Kreppein v. Celotex Corp.*, 969 F.2d 1424, 1426-27 (2d. Cir.1992);
(continued...)

when comparing fault have distinguished between conduct that causes or contributes to one's own injuries and conduct that causes or contributes to the collision or accident. *See* Victor E. Schwartz, *Comparative Negligence* §§ 4-6, 4-6(a), 4-6(b) (3d ed. 1994 & Supp. 1999); Henry Woods & Beth Deere, *Comparative Fault* §§ 5:5, 5:6. While Tennessee's courts have not directly confronted this matter, the distinction seems to be implicit in the Tennessee Supreme Court differentiation between "comparative negligence" and "comparative fault."[12]

Courts in other jurisdictions have addressed the distinction between fault contributing to one's own injuries and fault contributing to the collision in cases involving otherwise faultless passengers who failed to wear their seatbelts. Although Tennessee has limited the admissibility of evidence of seatbelt use in civil trials,[13] these decisions provide clear and helpful examples of the distinction between fault contributing to the collision and fault contributing to one's own injuries. A passenger not wearing a seatbelt did not cause or contribute to the collision and thus did not cause injury to the person or property of others. Nevertheless, the passenger's failure to wear a seatbelt may have contributed to his or her own injuries. *See, e.g., Alvarez v. Keyes*, 887 P.2d 496, 499 (Wash. Ct. App. 1995); *Bentzler v. Braun*, 149 N.W.2d 626, 640 (Wis. 1967).

Our courts have also recognized the distinction between a passenger's duty to exercise reasonable care for his or her own safety and a passenger's duty to the public to prevent collisions. Passengers have a duty to exercise reasonable care for their own safety. *See Harrison v. Pittman*, 534 S.W.2d 311, 315 (Tenn. 1976); *Rollins v. Winn-Dixie*, 780 S.W.2d at 768. Accordingly, in order to protect themselves, they are expected to warn drivers of unseen dangers, to protest excessive

---

[11](...continued)
*Cerretti v. Flint Hills Rural Elec. Co-op*, 837 P.2d 330, 347 (Kan. 1992); *Curry v. Moser*, 454 N.Y.S.2d 311, 315 (App. Div. 1982); *Kohler v. Dumke*, 108 N.W.2d 581, 583-84 (Wis. 1961). Moreover, the Uniform Comparative Fault Act, and many state statutes, explicitly mandate consideration of causation in the comparison of fault. *See* Ark. Code Ann. § 16-64-122(c) (Michie Supp. 1999); Conn. Gen. Stat. Ann. § 52-572h(d) (West 1991); Ga. Code Ann. § 51-11-7 (1982); Iowa Code Ann. § 668.3(3) (West 1998); Kan. Stat. Ann. § 60-258a(d) (1994); Minn. Stat. Ann. § 604.01(1a) (West Supp. 2000); 42 Pa. Cons. Stat. Ann. § 7102(b) (West 1998); Tex. Civ. Prac. & Rem. Code Ann. § 33.003 (West 1997); Vt. Stat. Ann. tit. 12, § 1036 (Supp. 1999); Wyo. Stat. Ann. § 1-1-109(a)(iv) (Michie 1999); Uniform Comparative Fault Act, § 2(b) cmt., 12 U.L.A. 136 (1996).

[12]The Tennessee Supreme Court has distinguished between "comparative negligence" and "comparative fault." *See Coln v. City of Savannah*, 966 S.W.2d at 40 n.6; *Owens v. Truckstops of Am.*, 915 S.W.2d at 425-26 n.7. Comparative negligence measures the plaintiff's negligence for the purpose of reducing the plaintiff's recovery. Comparative fault encompasses the allocation of recovery among multiple or joint tortfeasors according to their percentage of fault. The Court made this distinction on the theory that a plaintiff's recovery may only be reduced because of the plaintiff's negligence, whereas a defendant's liability may be based on theories of liability other than negligence, for example, strict liability. *Owens v. Truckstops of Am.*, 915 S.W.2d at 426 n. 7.

[13]Tenn. Code Ann. § 55-9-604(a) (1998) limits evidence regarding seatbelt use to products liability actions.

speed, and to refrain from riding in a vehicle being operated by an intoxicated or reckless driver. *See Cole v. Woods*, 548 S.W.2d 640, 650 (Tenn. 1977); *Schwartz v. Johnson*, 152 Tenn. 586, 592, 280 S.W. 32, 33 (1926). However, passengers owe no duty to the public to control, or even attempt to control, the operation of a vehicle unless they have a right to do so, either through their relationship to the vehicle itself or to the driver. *See Cecil v. Hardin*, 575 S.W.2d 268, 270 (Tenn. 1978); *Nichols v. Atnip*, 844 S.W.2d 655, 661-62 (Tenn. Ct. App. 1992).

The facts of *Cecil v. Hardin* dramatically illustrate the distinction between a passenger's duty to him or herself and a passenger's duty to others. The parents of a bicyclist who was killed by an intoxicated driver filed a wrongful death suit against the driver and the driver's passenger. The trial court directed a verdict for the passenger on the grounds that there was no evidence that his negligence caused the driver to strike the bicyclist or that the driver's negligence should be imputed to the passenger. The Tennessee Supreme Court affirmed the directed verdict because there was no evidence from which the jury could have concluded that the passenger had a right to control the operation of the vehicle, as opposed to the right to make suggestions which the driver was at liberty to disregard. *See Cecil v. Hardin*, 575 S.W.2d at 270.

The distinction between fault contributing to a collision and fault contributing to one's own injuries becomes crucial in a multi-party action in which the drivers have claims against each other. Comparing the fault of a passenger who did not contribute to the collision along with the fault of the drivers can potentially reduce the percentage of fault attributable to each driver, thereby affecting the drivers' rights of recovery against each other. Modified comparative fault accentuates changes in the attributed percentages of fault because these changes may very well affect the right of either or both drivers to recover.[14]

An example illustrates this phenomenon. Driver 1 ("$D^1$") and Driver 2 ("$D^2$") are involved in a collision. Passenger 1 ("$P^1$") is a guest in $D^1$'s vehicle. $P^1$, $D^1$, and $D^2$ are all injured. $P^1$ sues both $D^1$ and $D^2$. $D^1$ sues $D^2$, and $D^2$ sues $D^1$. Neither driver sues $P^1$. Both drivers were negligent, and both of their actions contributed to causing the collision. $P^1$ was also negligent, but $P^1$'s negligence only contributed to $P^1$'s own injuries, not to the collision itself or the drivers' injuries.[15] The trial court instructs the jury to allocate 100% of the fault among $P^1$, $D^1$, or $D^2$. This instruction places the jury in a dilemma. While the jury desires to reduce $P^1$'s damages because he contributed to his own injury, the jury cannot accomplish this without affecting the amount of fault allocated to

---

[14]In this regard, it is important to remember that under the Tennessee Supreme Court's comparative fault scheme, a claimant may recover damages in a two-party action if the claimant's fault is less than that of the other party. *See Coln v. City of Savannah*, 966 S.W.2d at 40; *McIntyre v. Balentine*, 833 S.W.2d at 57. When there are multiple defendants, the claimant may recover only if the claimant's fault is less than the combined fault of all other tortfeasors. *See Volz v. Ledes*, 895 S.W.2d 677, 680 (Tenn. 1995); *McIntyre v. Balentine*, 833 S.W.2d at 58.

[15]$P^1$ may have known, for example, that $D^1$ was intoxicated at the time but decided to ride with $D^1$ anyway.

each driver. Every percent of fault allocated to $P^1$ is a percent less for the jury to allocate between $D^1$ and $D^2$.

Continuing the example, suppose that the jury finds that $P^1$'s fault contributed to 20% of his injuries, and that the combined fault of $D^1$ and $D^2$ was the sole cause-in-fact of the collision. On a verdict form similar to the one in T.P.I. 3-Civil 3.60, the jury allocates fault in the following way: 20% of the fault to $P^1$; 35% of the fault to $D^1$; and 45% of the fault to $D^2$. Based on this verdict, the trial court must decide who pays what to whom. In a multi-party action like this one, a plaintiff may recover only if his fault is less than the combined fault of all tortfeasors. *See McIntyre v. Balentine*, 833 S.W.2d at 58. Because the verdict form does not specify whether $P^1$ contributed to the collision, the trial court cannot tell whether the jury considered $P^1$ to be a "tortfeasor" or not. If $P^1$ is treated as one of the "tortfeasors," the following is the result:

(a)     $D^1$ may recover because $D^1$'s fault (35%) is less than the combined fault of $P^1$ and $D^2$ (20% + 45% = 65%). Therefore, $D^1$ will recover 45% of his damages from $D^2$, but will recover nothing from $P^1$.[16]

(b)     $D^2$ may recover because $D^2$'s fault (45%) is less than the combined fault of $P^1$ and $D^1$ (20% + 35% = 55%). Therefore, $D^2$ will recover 35% of his damages from $D^1$, but will recover nothing from $P^1$.[16]

(c)     $P^1$ may recover because $P^1$'s fault (20%) is less than the combined fault of $D^1$ and $D^2$ (35% + 45% = 80%). Therefore, $P^1$ will recover 35% of his damages from $D^1$ and 45% of his damages from $D^2$.

The analysis changes if the trial court does not treat $P^1$ as a "tortfeasor" and does not consider the amount of fault allocated to $P^1$. Then, both $P^1$ and $D^1$ will recover as before, but $D^2$ will not recover because $D^2$'s fault (45%) is greater than $D^1$'s fault (35%). In either situation, the jury's consideration of $P^1$'s fault affects the drivers' rights to recover from each other.

The outcome will change again if the trial court instructs the jury not to treat $P^1$ as a "tortfeasor" and to allocate 100% of the fault between only the two drivers. Assume that the jury now allocates the 20% of the fault originally allocated to $P^1$ evenly between the two drivers, thereby allocating 45% of the fault to $D^1$ and 55% of the fault to $D^2$. Under this scenario, $P^1$ will still recover, and $D^2$ will still not recover from $D^1$ because his fault is still more than $D^1$'s fault. However, $D^1$ will now recover 55% of his damages, rather than the 45% recovery in the former two scenarios.

These three scenarios illustrate the importance of determining whether a passenger who did not cause the collision should be considered as one of the tortfeasors if either or both drivers assert

---

[16]Neither driver can recover from $P^1$ because this scenario assumes that $P^1$'s fault did not contribute to the collision. If $P^1$'s fault did not cause or contribute to the collision, it could not have caused or contributed to the drivers' injuries.

that the passenger's conduct contributed to his or her own injuries. The Wisconsin Supreme Court has addressed this matter by distinguishing between the "active" and "passive" negligence of the passenger. Passive negligence contributes to the passenger's injuries but, unlike active negligence, is not a cause of the collision itself. The passenger's passive negligence is "immaterial with respect to the right of one driver to recover from the other." *McConville v. State Farm Mut. Auto. Ins. Co.*, 113 N.W.2d 14, 20 (Wis. 1962). Therefore, the jury may only compare the passenger's active negligence, that is the passenger's negligence that was a cause of the collision itself, with the negligence of the drivers. Then, it must separately consider the passenger's passive negligence, if any, to reduce the plaintiff's recovery.

As a result of the decision in *McConville v. State Farm Mut. Auto. Ins. Co.*, the Wisconsin courts use a verdict form that instructs the jury to allocate the percentage of all fault causing the collision between those whose conduct contributed to the accident. The jury then allocates the fault that caused the passenger's injuries between the passenger and the other tortfeasors. Thus, the passenger's award is reduced by the fault attributable to him that produced his injuries.[17] Based on the facts of the previous scenario, the jury would have filled out the Wisconsin verdict form as follows:

(1)    What percentage of all causal negligence which produced the collision do you attribute to:

|     |     |     |     |
| --- | --- | --- | --- |
| (a) | $D^1$ | 45% | as to causes |
| (b) | $D^2$ | 55% | of the accident? |
| Total | | 100% | |

(2)    What percentage of all causal negligence which produced the plaintiff's injuries do you attribute to:

|     |     |     |     |
| --- | --- | --- | --- |
| (a) | The combined causal negligence of $D^1$ & $D^2$ | 80% | as to cause of plaintiff's |
| (b) | The causal negligence of $P^1$ | 20% | injuries? |
| | Total | 100% | |

Based on this form, the trial court would translate the jury's findings as follows:

$$D^1 \quad 45\% \times 80\% = 36\%$$

---

[17] *See* Wisconsin Civil Jury Instructions Committee, Wisconsin Jury Instructions - Civil, No. 1592 (1997) (available from Continuing Education and Outreach, University of Wisconsin Madison Law School, 975 Bascom Mall, Room, 2348, Madison, Wisconsin 53706-1399 or <http://www.law.wisc.edu/clew/index.htm>).

$$D^2 \qquad 55\% \times 80\% = 44\%$$
$$P^1 \qquad \qquad \qquad \qquad \underline{20\%}$$

Total    100%

Accordingly, the judgment would order $D^1$ to pay 36% of $P^1$'s damages and would order $D^2$ to pay 44% of $P^1$'s damages and 55% of $D^1$'s damages.[18]

Fairness, consistency, and efficiency are the hallmarks of the Tennessee Supreme Court's comparative fault scheme. Clearly linking liability with fault accomplishes these ends. *See Owens v. Truckstops of Am.*, 915 S.W.2d at 428; *McIntyre v. Balentine*, 833 S.W.2d at 58. We find that the Wisconsin model creates a strong correlation between liability and fault and, accordingly, adopt a similar approach. In multi-party actions such as this one, the trial court should instruct the jury to engage in the following three-step process:

1.      First, as in any comparative fault case, the jury should determine the actual dollar amount of the damages incurred by each claimant[19] individually without taking fault into consideration.[20]

---

[18]Maine also uses a bifurcated approach to the allocation of fault. *See* Me. Rev. Stat. Ann. tit. 14, § 156 (West 1980); *Jackson v. Frederick's Motor Inn*, 418 A.2d 168, 172-73 (Me. 1980); *Wing v. Morse*, 300 A.2d 491, 500-01 (Me. 1973). In the liability phase, the jury focuses exclusively upon the legal causative effect of the parties' fault to the claimant's injury. In the second phase, the jury makes a just and equitable apportionment of damages between mutually blameworthy parties. The jury reduces the damages by a dollar amount, rather than a percentage.

[19]The term "claimant" means any party seeking damages, including a defendant with a cross-claim against other defendants or a counterclaim against the plaintiff.

[20]*See* T.P.I. 3-Civil 3.61.

2.      Second, the jury should allocate percentages of fault (totaling 100%) to each actor[21] whose fault caused or contributed to the collision.[22]

3.      Third, the jury should state the percentage by which the claimant's conduct caused or contributed to his or her own injuries along with the percentage of fault collectively attributable to the actor or actors whose fault was the cause of the collision.

Attached as an appendix to this opinion is a sample verdict form prepared in conformance with this opinion. Once the jury returns its verdict in this or a similar form, the trial court should then calculate the dollar amount of the damages recoverable by each claimant. To avoid error, these calculations should not be left to the jury.

**D.**

In light of our analysis of the significant difference between fault that contributes to causing a collision and fault that contributes only to the claimant's injuries, we find that the trial court's instructions in this case were erroneous. However, under the facts of this case, we find that the error more probably than not did not affect the verdict and the judgment from which State Farm appeals and did not result in prejudice to the judicial process. Accordingly, we decline to grant State Farm a new trial solely because the trial court instructed the jury to allocate fault not only to Messrs. Hawks and Forrest but also to Ms. Grandstaff. *See* Tenn. R. App. P. 36(b).[23]

---

[21] In certain circumstances, the term "actor" may include a non-party. If the defendant alleges that a non-party contributed to the plaintiff's injuries, the fact-finder may apportion fault to parties and nonparties, *see McIntyre v. Balentine*, 833 S.W.2d at 58, but only to persons against whom the plaintiff has a cause of action. *See Samuelson v. McMurtry*, 962 S.W.2d 473, 475 (Tenn. 1998); *Owens v. Truckstops of Am.*, 915 S.W.2d at 428; *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79, 83 (Tenn. 1996). The plaintiff bears the risk of failure to join potentially liable tortfeasors against whom the plaintiff has a cause of action. *See Samuelson v. McMurtry*, 962 S.W.2d at 475; *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d at 83. A defendant who fails to identify potentially liable tortfeasors who are not already parties pursuant to Tenn. Code Ann. § 20-1-119(a) (Supp. 1999), cannot attribute fault to these non-parties. *See Samuelson v. McMurtry*, 962 S.W.2d at 475; *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d at 84.

[22] The shortcoming of T.P.I. 3-Civil 3.61 is that it does not differentiate between fault that caused the collision and fault that contributed to the passenger's injuries. It assumes that the actions or inactions of the passengers were a cause of the collision. While it is possible for passengers to be at fault for a collision, it is also possible that their fault, if any, only contributed to their own injuries.

[23] Tenn. R. App. P. 36(b) provides that "[a] final judgment from which relief is available and
(continued...)

The following considerations are the necessary ingredients to our decision to invoke Tenn. R. App. P. 36(b) with regard to the instructions to compare Ms. Grandstaff's fault with the fault of Messrs. Forrest and Hawks. First, the jury could not have found Ms. Grandstaff at fault for the collision.[24] Second, State Farm, as Ms. Grandstaff's uninsured motorist carrier, is exposed to liability only to the extent that Mr. Forrest, the uninsured driver, is liable to Ms. Grandstaff. Third, State Farm never had and cannot now have any exposure regarding the claims between Messrs. Forrest and Hawks.[25] Finally, the jury determined that Messrs. Hawks and Forrest were equally at fault (49% to 49%).

With these considerations in mind, we now turn to the record to determine what the jury would have done had the trial court instructed the jury to use the three-step approach we have approved in the preceding section of this opinion. We have determined that the jury's deliberations and decision would have been essentially the same.

The trial court's actual instructions regarding the calculation of the parties' damages do not differ from step one of our recommended procedure. In its instructions and verdict form, the trial court directed the jury to determine the amount of each party's damages without taking fault into consideration. Determining each party's damages was appropriate because each party was a claimant.

Had the trial court followed step two of our recommended procedure, it would next have instructed the jury to allocate all the fault (100% of the fault) that contributed to or caused the collision. Because the record contains no evidence that Ms. Grandstaff caused the collision, the jury

---

[23](...continued)
otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."

[24]The only evidence in the record from which the jury could have found Ms. Grandstaff at fault was the evidence that she failed to tell Mr. Forrest to slow down, assuming that he was actually speeding immediately before the collision. There is no evidence that Ms. Grandstaff had a right to control the operation of Mr. Forrest's vehicle, as opposed to the mere right to make suggestions which Mr. Forrest was free to disregard. Accordingly, the jury could only have found that Ms. Grandstaff's fault contributed to her own injuries, rather than to the collision or the damages sustained by Messrs. Hawks and Forrest. Had the jury found that Ms. Grandstaff's fault contributed to the collision or to Messrs. Hawks' and Forrest's damages, we would not hesitate to set this finding aside under Tenn. R. App. P. 13(d) because the record contains no material evidence to support it.

[25]There are three reasons why State Farm had no exposure regarding Messrs. Forrest's and Hawks' claims. First, neither of them made claims against Ms. Grandstaff. Second, State Farm did not insure either Mr. Hawks or Mr. Forrest. Third, Messrs. Forrest and Hawks have now settled their claims against each other, and so there can be no further litigation between them.

would have been instructed to allocate 100% of the fault for the collision between Messrs. Hawks and Forrest. Rather than limiting the allocation of fault to Messrs. Hawks and Forrest, the trial court instructed the jury to include Ms. Grandstaff in its fault calculation. As a result, the jury allocated 2% of the fault to Ms. Grandstaff and then found Messrs. Hawks and Forrest equally at fault by allocating 49% of the fault to each of them. Thus, the trial court's instructions differed from step two of our recommended procedure because the trial court asked the jury to allocate fault to a party whose fault did not contribute to the collision.

Step three of our recommended procedure would have required the trial court to instruct the jury to determine the extent to which each claimant's fault contributed to his or her own injuries. The jury would have communicated its decision by calculating the percentage of each claimant's fault as well as the total percentage of fault collectively attributable to those whose fault caused the accident. For each claimant, these two percentages should have equaled 100%. In the actual trial, the jury determined that Ms. Grandstaff was 2% at fault for her own injuries.[26] Therefore, the combined fault of Messrs. Hawks and Forrest must have been 98%.[27] Thus, the jury's actual answers on the verdict form track what the jury would have done had it been given the instruction required by step three of our recommended procedure.

The problem with the instructions the trial court actually gave is that they did not require the jury to explain what it intended when it allocated 2% of the fault to Ms. Grandstaff. There are only two possibilities. First, it could signify that the jury found Ms. Grandstaff 2% at fault for the collision. Second, it could mean that the jury found Ms. Grandstaff 2% at fault for her own injuries. Because there is no evidence that Ms. Grandstaff was at fault for the collision, the only permissible interpretation of the jury's allocation of 2% of the fault to Ms. Grandstaff is that the jury determined that she was 2% at fault for her own injuries. If the fault allocated to Ms. Grandstaff did not relate to the collision, then it could be argued that 2% of the fault for the collision remains unallocated because the jury allocated only 98% of the collective fault for the collision to Messrs. Hawks and Forrest. It could also be argued, however, that the jury allocated all the fault for the collision to Messrs. Hawks and Forrest.

We must now determine whether State Farm has been prejudiced by the trial court's instructing the jury to include Ms. Grandstaff in the allocation of the fault for the collision. As we see it, State Farm could only have been prejudiced if, had Ms. Grandstaff not been included in the allocation of fault, more fault would have been allocated to Mr. Hawks and less fault to Mr. Forrest. We find no evidentiary basis in this record to support concluding that the jury would have allocated more fault to Mr. Hawks had Ms. Grandstaff not been in the equation.

---

[26]For the purpose of this analysis, we need not concern ourselves with the fault allocated to Messrs. Hawks and Forrest for their own injuries. While they are claimants, their claims are not at issue here. Neither of them were attempting to recover from Ms. Grandstaff, and State Farm had no potential liability for either of their claims.

[27]The combined fault of Ms. Grandstaff and Messrs. Hawks and Forrest must equal 100%.

We have a duty to uphold a jury's verdict whenever possible. *See Henshaw v. Continental Crescent Lines, Inc.*, 499 S.W.2d 81, 86 (Tenn. Ct. App. 1973); *Templeton v. Quarles*, 52 Tenn. App. 419, 432, 374 S.W.2d 654, 660 (1963). In doing so, we must give effect to the jury's intention, *Arcata Graphics Co. v. Heidelberg Harris, Inc.*, 874 S.W.2d 15, 27 (Tenn. Ct. App. 1993), as long as that intention is permissible under the law and ascertainable from the phraseology of the verdict. *See Briscoe v. Allison*, 200 Tenn. 115, 125-26, 290 S.W.2d 864, 868 (1956); *Crafton v. Edwards*, 58 Tenn. App. 606, 613, 435 S.W.2d 486, 490 (1968). Accordingly, we should not set aside a jury's verdict because of an erroneous instruction unless it affirmatively appears that the erroneous instruction actually misled the jury. *See Carney v. Coca-Cola Bottling Works of Tullahoma*, 856 S.W.2d 147, 150 (Tenn. Ct. App. 1993); *Helms v. Weaver*, 770 S.W.2d 552, 553 (Tenn. Ct. App. 1989).[28]

We do not believe that the jury was misled in this case. Based on our review of the evidence, we have concluded that the jury decided that both Mr. Hawks and Mr. Forrest were at fault for the collision and that the evidence did not permit them to find that one driver was more at fault than the other. Accordingly, they found both drivers to be equally at fault. It matter's little that this equality was expressed in percentage terms as 49% to 49% rather than 50% to 50%. Had it not been instructed to include Ms. Grandstaff in its consideration of fault, the jury would have expressed its finding that the drivers were equally at fault by allocating 50% of the fault to Mr. Hawks and 50% of the fault to Mr. Forrest. Accordingly, we conclude that State Farm was not ultimately prejudiced by the trial court's decision to include Ms. Grandstaff in the allocation of fault that should have been between Messrs. Hawks and Forrest.

---

[28]This court has repeatedly found erroneous or omitted instructions to be harmless when we have concluded that the error did not or could not have played a material role in the jury's decision-making process. *See Souter v. Cracker Barrel Old County Store, Inc.*, 895 S.W.2d 681, 685 (Tenn. Ct. App. 1994) (concluding that failure to give comparative fault instructions was harmless where the jury determined that the defendant had not been negligent); *Helms v. Weaver*, 770 S.W.2d at 553 (including an instruction based on an inapplicable statutory rule of the road was harmless because it was "difficult to envision that a jury would consider the statute in any way applicable"); *Cardwell v. Golden*, 621 S.W.2d 774, 775 (Tenn. Ct. App. 1981) (holding that refusing to change remote contributory negligence was harmless where the jury could not reasonably find that the plaintiff's negligence was remote); *Long v. Allen*, 497 S.W.2d 743, 745-46 (Tenn. Ct. App. 1973) (holding that an error in an instruction involving the difference between contributory negligence and remote contributory negligence was harmless where the jury must have found either that the defendant was not negligent or that the plaintiff was contributorily negligent).

In reaching this conclusion, we are mindful that neither trial courts[29] nor appellate courts[30] are permitted to reallocate fault once it has been allocated by the jury. We are not reallocating the 2% of fault allocated to Ms. Grandstaff. Rather, we are interpreting a jury verdict in order to uphold it and to give effect to the jury's apparent intention. As we interpret the verdict, the jury concluded that Messrs. Hawks and Forrest were equally at fault for the collision and that Ms. Grandstaff was 2% at fault for her injuries. Accordingly, both Mr. Hawks and Mr. Forrest were liable for 50% of Ms. Grandstaff's net damages. That is the same result the trial court reached in its May 15, 1997 order.[31]

## III.
## The Remittitur of Ms. Grandstaff's Damages

Ms. Grandstaff asserts on this appeal that the trial court erred by granting a remittitur reducing her damages from $138,218.37 as found by the jury to $75,000. She argues that the jury's assessment of her damages was fully supported by the evidence. Based on our review of the evidence, we find that the evidence does not preponderate against the trial court's conclusion.

## A.

The impact of the collision propelled Ms. Grandstaff forward, causing her head to break the windshield. Ms. Grandstaff suffered cuts and bruises on her face, shoulder, and hip, and some particles of the windshield became embedded in her face. According to the evidence, Ms. Grandstaff also had a pre-existing lower back problem that was worsened by a new injury caused to her neck by the collision.

Ms. Grandstaff incurred medical expenses of $10,218.37, and will continue to see her chiropractor at least once a month, at a cost of $50 per visit, for the foreseeable future. She may also have to undergo one or two additional office procedures with her doctor to remove any glass in her

---

[29]*See Turner v. Jordan*, 957 S.W.2d 815, 824 (Tenn. 1997); *Fye v. Kennedy*, 991 S.W.2d 754, 761 (Tenn. Ct. App. 1998).

[30]*See Winstead v. Goodlark Reg'l Med. Ctr*, No. M1997-00209-COA-R3-CV, 2000 WL 343789, at *6 (Tenn. Ct. App. Apr. 4, 2000) (No Tenn. R. App. P. 11 application filed); *Allen v. Payne*, No. 03A01-9903-CV-00067, 1999 WL 1076922, at *1 (Tenn. Ct. App. Nov. 30, 1999) (No Tenn. R. App. P. 11 application filed).

[31]The trial court used a different path to arrive at the correct result. It directed the drivers to each pay Ms. Grandstaff 49% of her total damages. [2 × 49% of total damages = 98% of total damages]. The proper method to calculate damages in circumstances such as this one is to first reduce Ms. Grandstaff's damages by the percentage of her fault and then to require each driver to pay her one-half of these net damages. [100% of total damages - 2% = 98% of total damages; each driver pays 50% of the net damages or 49% because the drivers are equally at fault].

skin that has not yet been found. The cost of such procedure ranges between $1,000 and $1,500. Ms. Grandstaff did have some scarring, but by the time of trial, her plastic surgeon testified that the scars had healed, and were almost indiscernible.

The jury found that Ms. Grandstaff's damages were $138,218.37. In its judgment of April 14, 1997, the trial court ordered each defendant to pay Ms. Grandstaff $67,727 (49% of the total damages), for a total of $135,454. In a June 18, 1997 letter addressed to counsel for State Farm and Ms. Grandstaff, the trial court made clear its intention to suggest a remittitur of $63,000, "reducing the original Judgment from One Hundred Thirty-eight Thousand ($138,000.00) Dollars to Seventy-five Thousand ($75,000) Dollars." Ms. Grandstaff accepted this remittitur under protest. On September 10, 1997, the court entered an order granting the remittitur, "therefore granting a Judgment to Plaintiff in the amount of $75,000.00, of which one-half (1/2) of that Judgment shall be awarded against . . . [Mr.] Forrest, the claim against [Mr. Hawks] having been settled post-trial."

**B.**

In personal injury cases, calculation of damages is within the province of the jury. *See Lunn v. Ealy*, 176 Tenn. 374, 376, 141 S.W.2d 893, 894 (1940). Nevertheless, the trial court may suggest remittitur of a verdict if the court finds that the verdict is excessive. *See* Tenn. Code Ann. § 20-10-102(a) (1994). If the party in whose favor the verdict has been rendered refuses to make the remittitur, the trial court must grant a new trial. *See City of Gatlinburg v. Fox*, 962 S.W.2d 479, 481 (Tenn. 1998). If, however, the party accepts the remittitur under protest, the party may then appeal the trial court's finding that the verdict was excessive. *See* Tenn. Code Ann. § 20-10-102 (a); *City of Gatlinburg v. Fox*, 962 S.W.2d at 481.

Trial courts should suggest remittitur if it would accomplish justice between the parties without the cost and delay inherent in a new trial. *See Turner v. Jordan*, 957 S.W.2d at 823; *Thrailkill v. Patterson*, 879 S.W.2d 836, 840 (Tenn. 1994). If possible, the courts should utilize the remedy of remittitur, rather than ordering a new trial based on the size of the jury verdict. *See Thrailkill v. Patterson*, 879 S.W.2d at 840; *United Brake Sys., Inc. v. American Envtl. Protection, Inc.*, 963 S.W.2d 749, 760 (Tenn. Ct. App. 1997).

This court reviews a trial court's remittitur under the standard of Tenn. R. App. P. 13(d). *See* Tenn. Code Ann. §§ 20-10-102(b); *Thrailkill v. Patterson*, 879 S.W.2d at 841. Accordingly, when reviewing a trial court's suggestion of remittitur, we must use the standard of review that applies to findings of a trial judge, *see Coffey v. Fayette Tubular Prods.*, 929 S.W.2d 326, 331 (Tenn. 1996), and determine whether the evidence preponderates against the trial judge's adjustment. *See Long v. Mattingly*, 797 S.W.2d 889, 896 (1990); *Coffey v. Fayette Tubular Prods.*, 929 S.W.2d at 331.

**C.**

A review of the record does not suggest that the evidence preponderates against the trial court's finding that the verdict was excessive or the trial court's decision to remit Ms. Grandstaff's damages by $63,000. The trial court was in a better position than this court to weigh the testimony concerning Ms. Grandstaff's injuries and damages. Ms. Grandstaff's plastic surgeon testified that the scars had healed to the point of being almost indiscernible. Apart from the cost of visiting her chiropractor, which also occurred prior to the accident, her medical expenses will not exceed $15,000. Accordingly, we find that the record supports the trial court's decision to reduce Ms. Grandstaff's damages to $75,000.

We find it necessary, however, to clarify the effect of the trial court's remittitur. In its June 18, 1997 letter, the trial court suggested a remittitur of $63,000, "reducing the original Judgment" from $138,000 to $75,000. It is not clear whether the trial court was referring to the jury's $138,218.37 verdict or to the April 14, 1997 judgment awarding Ms. Grandstaff a total of $135,454 (49% of her damages from each defendant). A remittitur reduces an excessive verdict rather than a judgment. Thus, the remittitur in this case reduced the $138,218.37 verdict by $63,000 to $75,218.37. Because Ms. Grandstaff has already settled with Mr. Hawks, the net effect of the remittitur is to reduce the amount that State Farm must pay under its uninsured motorist coverage from $67,727 (49% of $138,218.37) to $36,857 (49% of $75,218.37).

**IV.**

We affirm the judgment as remitted by the trial court subject to the modifications required by Section III of this opinion. We tax the costs of this appeal to State Farm Mutual Insurance Company and its surety for which execution, if necessary, may issue.

# APPENDIX

## MULTI-PARTY JURY VERDICT FORM

1. Without considering fault, what total of damages do you find was sustained by each of the parties making a claim:

    <u>Name of claimant</u>     $_____

    <u>Name of claimant</u>     $_____

    <u>Name of claimant</u>     $_____

    <u>Name of claimant</u>     $_____

2. What percentage of fault do you attribute to each person whose conduct caused or contributed to the collision (these persons may include non-parties properly named by the defendants). Your answers must total 100%.

    <u>Name of person</u>     _____(0-100%)

    <u>Name of person</u>     _____(0-100%)

    <u>Name of person</u>     _____(0-100%)

    <u>Name of person</u>     _____(0-100%)

    Total         _____100%_____

3. State the percentage by which the negligence of each claimant named in paragraph 1 caused or contributed to the claimant's own injuries (as opposed to the collision):

    <u>Name of claimant</u>     _____(0-100%)

    <u>Name of claimant</u>     _____(0-100%)

    <u>Name of claimant</u>     _____(0-100%)

    <u>Name of claimant</u>     _____(0-100%)