IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 17, 2001 Session

# DONNA SHARON PRESLEY v. CALVIN HERMAN SHADRICK, ET AL. In re:  S.A.P. and S.M.P.

### Appeal from the Juvenile Court for Anderson County
### No. J-18032, J-18140, 99671, 99670 and 99578     Patricia R. Hess, Judge

---

### No. E2001-00015-COA-R3-JV
### Filed December 27, 2001

---

This is a custody and guardianship suit between petitioners, neither of whom is the biological or adoptive parent of the set of twins ("Children") who are at the center of this dispute.  The parties in this appeal are, on one side, the Children's maternal great uncle and his wife, Calvin Herman Shadrick and Willie Mae Shadrick ("Shadricks"), and, on the other side, the children's paternal grandmother, Donna Sharon Presley ("Presley").  The Trial Court granted custody and guardianship of the Children to the Shadricks.  Presley appeals.  We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Philip R. Crye, Jr., Clinton, Tennessee, for the Appellant, Donna Sharon Presley.

Judith R. Whitfield, Oak Ridge, Tennessee, for the Appellees, Calvin Herman Shadrick and Willie Mae Shadrick.

## OPINION

## Background

This custody and guardianship matter involves a set of twins approximately two years old at the time of the final hearing. In May 1999, when the Children were approximately one year old, the Children's father ("Father") murdered their mother ("Mother") during an apparent domestic altercation. The investigating police department placed the Children in the care of their paternal grandmother, Donna Sharon Presley. Shortly thereafter, Presley filed a Petition for Guardianship and Custody against the Father, requesting that the trial court issue a temporary restraining order prohibiting the Children's relatives from removing the Children from her care. The record does not contain a response to this petition or a petition by Father seeking custody. The Trial Court entered a Temporary Restraining Order granting Presley's petition and awarding temporary placement of the Children to Presley. The TRO also ordered Father not to have any contact with the Children except as directly supervised by the Department of Children's Services ("DCS").[1]

Thereafter, Calvin Herman Shadrick and Wilma Mae Shadrick, a married couple, filed a Petition to have the Children Declared Wards of the Court and for Emergency Custody, contending that the Children were dependent and neglected. The Shadricks were the foster parents of Mother, and Calvin Herman Shadrick is the Children's maternal great uncle. A third Petition for Guardianship and Custody was filed by Brian and Teresa Kay Braden, who are not parties to this appeal. Brian Braden is the former step-brother of Father. The Bradens filed their petition at Father's request. The record on appeal, however, shows that Father testified he later changed his mind and wanted custody of the Children to be awarded to his mother, Presley.

The Trial Court consolidated all three petitions and held a hearing in September 1999, to determine temporary custody ("first hearing"). In August 2000, the Trial Court held a second hearing ("final hearing") to determine permanent custody.

The Trial Court entered an Interim Order after the first hearing in which it stated that it could not "find that it is contrary to the [C]hildren's best interest . . . to continue to reside with [Presley] pending a final hearing in this cause, nor can the Court find that [Presley] presents a danger to the minor children. . . ." The Trial Court, pending the final hearing, granted custody of the Children to Presley, visitation to the Bradens as agreed-upon between them and Presley, and visitation to the Shadricks. The Trial Court further ordered that none of the parties were to allow Father any contact with the Children and that if any of the parties allowed Father to have contact with the Children, the Trial Court would take this into consideration at the final hearing.

The record on appeal shows that Father was under a suicide watch at a mental health facility while being detained for the murder of Mother. The record shows that the Trial Court

---

[1] The Father was out of jail on bond for sometime during the pendency of this matter at the trial level.

received a CASA Report at the first hearing which states that during this period of time, Father made statements that he had been abused as a child by his mother, Presley. At the final hearing, Father's former step-mother testified that Father had reported this abuse to her. Both Father and Presley denied this abuse, and Presley testified that she and Father had never discussed these allegations. Father's former step-mother, however, testified Father told her he lied about not being abused by Presley because he feared that the Shadricks would gain custody of the Children.

The record also shows that Father's parents divorced when he was a teenager and that his father was awarded custody of him.[2] In addition, the record shows that after his parents' divorce and while Father was still a minor, Presley and Father had no contact for a period of approximately four years.

The record on appeal shows that after the Children were born, despite Presley's and Father's past difficulties, Presley had regular contact with the Children. Presley, age 51 at the time of the final hearing, is unmarried, and her only child is Father. Presley has no physical or mental disabilities and does not smoke or drink. Presley is employed full-time in retail and also receives income from rental property. Presley has a three bedroom, one bath home. The record on appeal shows that for childcare, Presley relies upon a church-run pre-school, her mother, sister, and various babysitters. The record shows that during the week, Presley would drop off the Children at pre-school around 10:30 or 11:00 a.m. If Presley is scheduled to work until 9 p.m., she picks up the Children from pre-school before 6:00 p.m. and takes them home to a babysitter before returning to work to finish her shift.

In addition, at the time of the first hearing, Presley was involved in a long-term dating relationship. Presley testified at the first hearing that this boyfriend resided with her before she gained temporary custody of the Children. Once Presley obtained temporary custody of the Children, the boyfriend stopped living with her. Thereafter, the boyfriend had contact with the Children but never had been alone with them. Sometime prior to the final hearing, Presley's boyfriend was arrested for assaulting her. At the final hearing, Presley testified she no longer was involved with this man, and he would no longer be present at the Presley residence.

Leonora Doyle, a Child Protective Services case manager, testified on behalf of Presley at the first hearing. Two of Doyle's reports regarding her investigation of Presley's care of the Children are contained in the record on appeal. Doyle reported that she made a home visit and found Presley's home environment suitable and the Children happy. Doyle also states in her report that a DCS file search was conducted regarding the allegations of abuse made by Father against Presley. The file search, however, did not result in any indication that Presley was an abuser. Doyle also stated in her later report that a criminal records check on Presley was performed in three counties and that this search showed nothing.

---

[2] After Father's parents divorced, his father remarried. Father had two step-siblings, one of whom, Brian Braden, petitioned the Trial Court for custody of the Children.

The other petitioners involved in this appeal, the Shadricks, served as foster parents to Mother beginning when Mother was approximately eleven years old. Mother had been placed in foster care after suffering from abuse and neglect at the hands of her mother, who is Calvin Herman Shadrick's sister. The Shadricks provided care for Mother until she reached approximately age eighteen. The Shadricks testified they did not have much contact with Mother or the Children after Mother married Father because Father would not allow it.

The Shadricks have been married for 36 years and reside in a three bedroom home. The couple raised four biological children, have provided care for Mother and two other foster children and have many grandchildren. At the time of the final hearing, Ms. Shadrick was 58 years old, while Mr. Shadrick was 57 years old. The proof in the record shows that Mr. Shadrick is self-employed and that Ms. Shadrick is not employed outside of the home and describes herself as a professional foster parent. A portion of their income currently is derived from providing foster care for one foster child through the Omnivision program. Previously, Ms. Shadrick worked outside of the home with special-needs children. Ms. Shadrick testified that out of all the petitioners, she spends the most amount of the time with the Children since she is at home with them. The record shows that the Trial Court received a second CASA Report at the final hearing which was rather extensive and contained an interview of Ms. Shadrick's Omnivision supervisor. The Omnivision supervisor had worked with the Shadricks for a number of years and stated that the Shadricks were "good people and good parents."

The proof in the record on appeal shows that Ms. Shadrick has a smoking habit of one to two packs per day; regularly smokes inside the house; smokes while the Children are visiting her; and allows visitors to smoke in the house in the presence of the Children. The record also shows that Ms. Shadrick acknowledged that cigarette smoke is harmful to the Children. Furthermore, Ms. Shadrick, although not diagnosed with a sleeping disorder, testified that unless she stays busy, she falls asleep and cannot watch television or drive long distances because of this problem. The Shadricks denied this sleeping problem would interfere with Ms. Shadrick's ability to care for the Children.

In addition, the record on appeal shows that the Shadricks' current foster child is an eighteen year old mentally disabled male who, according to Ms. Shadrick, functions at the level of a young child. Ms. Shadrick testified she and her husband anticipate caring for this foster child for the rest of his life. The record on appeal shows that Ms. Shadrick denied that the foster child was a threat to the Children or that she had any reason to believe that anything inappropriate would occur between the foster child and the Children. The record contains a CASA Report which states that the Shadricks' Omnivision supervisor reported that this foster child had "no sexual problems and had not been aggressive while living with the Shadricks." However, Ms. Shadrick testified that the foster child had broken into the home of the Shadricks' son and had taken some personal property. Moreover, Ms. Shadrick testified at the final hearing that when the Children have visitation with them, she sleeps on the couch. Ms. Shadrick explained that while she trusts the foster child, "I'm not a fool, anything can happen, but he would have to pass that door to get to the [C]hildren's room and I'm a very light sleeper."

The record on appeal shows that Presley complained about the care and supervision the Shadricks provided the Children due to the presence of diaper rashes, insect bites, cuts and bruises which Presley discovered upon the Children's return from the Shadricks' home. At the final hearing, these complaints were corroborated by one of the Children's pre-school teachers. Moreover, Presley and the pre-school teacher both testified that after returning from their four-day visitation period with the Shadricks, the Children exhibited changes in their personalities and would have nightmares.

The Shadricks denied the Children were not supervised while in their care. The Shadricks, however, expressed concern that Presley was allowing the Father visitation with the Children despite the Trial Court's no-contact order. At the first hearing, Presley testified that while she would follow the Trial Court's no-contact order regarding Father's visitation, she would like for Father to see the Children. While Presley and Father both denied that Presley allowed Father to visit the Children at her home, Presley admitted she allowed the Children to talk to Father on the telephone. Presley testified she did not realize that the Interim Order prohibited telephone contact. In addition, when Father was asked at the final hearing if he had visited the Children while they were at the home of his maternal grandmother, Presley's mother, he invoked his Fifth Amendment right against self-incrimination. The Shadricks also expressed concern about Presley's willingness to allow them visitation with the Children.

At the final hearing in August 2000, in addition to the testimony of the parties themselves, many witnesses provided testimony regarding each petitioner's fitness as custodians of the Children.[3] The Trial Court, in its Order, stated the parties stipulated that the issue of dependency and neglect was not at issue and that, therefore, the only remaining issue for its determination was the placement of the Children.[4] The Trial Court held that while all of the parties could physically and emotionally provide for the well-being of the Children, the best interests of the Children would be met by placing them in the Shadricks' custody. The Trial Court also appointed the Shadricks as guardians of the Children. The Trial Court granted visitation to Presley but denied visitation to the Bradens. Presley appeals. We affirm.

## Discussion

---

[3] At the final hearing, Presley and Ms. Shadrick provided both stipulated testimony and live testimony.

[4] Father, through counsel, filed a Stipulation and Withdrawal of Counsel, which was signed by the parties. The Stipulation provides, in pertinent part, the following:

> That on or about May 14, 1998[,] a domestic situation arose that resulted in the death of [Mother] to which the respondent [Father] plead guilty to Voluntary Manslaughter in November, 1999. That in the issuance [sic] of Judicial Economy, the respondent is able and willing to stipulate to the fact that based on the above mentioned facts the court will find that the minor children . . . are dependent and neglected under T.C.A. § 37-1-102 with regards to [Father]. . . .

On appeal and although not exactly stated as such, Presley raises the following issues: (1) the Trial Court erred in admitting a CASA Report and a 1991 Department of Children's Services home study of the Shadrick's home at the first hearing and a second CASA Report at the final hearing; (2) the Trial Court erred in refusing to grant her Petition for Guardianship and Custody; and (3) the evidence preponderates against the Trial Court's finding that it is in the best interests of the Children to place them in the custody of the Shadricks.[5] The Shadricks, of course, do not dispute the Trial Court's award of custody of the Children to them and raise no further issues on appeal

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Alexander v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998). A Trial Court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997). With respect to Presley's issues on appeal regarding the Trial Court's evidentiary rulings and the Trial Court's determination of custody, our standard of review is an abuse of discretion review. *Otis v. Cambridge Mut. Fire Ins. Co.,* 850 S.W.2d 439, 442 (Tenn. 1992) (holding "admissibility of evidence is within the sound discretion of the trial judge"); *Varley v. Varley*, 934 S.W.2d 659, 665 (Tenn. Ct. App. 1996) (holding "'[t]rial courts are vested with wide discretion in matters of child custody'") (quoting *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993)). We should not reverse for "'abuse of discretion' a discretionary judgment of a trial court unless it affirmatively appears that the Trial Court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining.'" *Marcus v. Marcus,* 993 S.W.2d 596, 601 (Tenn. 1999) (quoting *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)).

Presley's first issues on appeal concern the Trial Court's admission into evidence of two CASA Reports and a 1991 DHS home study regarding the Shadricks' foster care of Mother.[6] The transcript of the first hearing shows that a CASA Report ("first CASA Report") and the 1991 DHS Report were entered over the objection of Presley's attorney. With respect to the first CASA Report, Shadricks' counsel cited Tenn. Code Ann. § 37-1-129(d) as the basis for her request that the Trial Court enter the report into evidence. Presley's attorney objected, arguing that the makers of the report were present to testify about their findings and that the report's recommendations regarding custody were based upon an incomplete investigation. Presley also argued "the law is very specific that the report itself, any report is not admissible unless under some exception." On appeal, Presley contends that this report should not have been admitted into evidence because it contains multiple layers of hearsay and because the second author of the report did not sign it.

---

[5] Presley also contends in her brief that the Trial Court erred in finding that the Children were dependent and neglected. At oral argument, however, Presley's attorney conceded that due to the entry of the Father's stipulation of dependency and neglect at the final hearing, this is not an issue on appeal. Father's stipulation was entered without objection and as discussed, was signed by counsel for the parties. Also, Presley's attorney, in his opening statement to the Trial Court, remarked that the dependency and neglect issue had been resolved.

[6] The record on appeal appears to contain a less than complete copy of the first CASA Report at issue.

The statute cited by Shadricks' counsel as the basis for the admission of the first CASA Report, Tenn. Code Ann. § 37-1-129(d), provides:

> In hearings under subsections (b) and (c), all evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition. The parties or their counsel shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making the reports. Sources of confidential information need not be disclosed.

Tenn. Code Ann. § 37-1-129(c) concerns hearings to determine whether a child is "dependent, neglected or unruly. . . ." As discussed, the Shadricks originally raised the issue of dependency and neglect in their petition. Also, Presley's attorney had the opportunity to cross-examine the makers of the report.

Balanced against Tenn. Code Ann. § 37-1-129(d) is Tenn. R. Evid. 802 which prohibits the admission of hearsay into evidence, subject to certain exceptions. In light of the record before us, it is not necessary that we resolve this apparent conflict as our resolution of this appeal is not dependent upon whether the report was or was not properly considered by the Trial Court. Although it is difficult to determine from the Final Order what proof the Trial Court specifically relied upon in awarding custody and guardianship to the Shadricks, the record on appeal contains a considerable amount of proof, besides this report, regarding Presley's and the Shadricks' fitness to serve as custodians of the Children. Accordingly, we hold that since the record contains other testimony and proof more than sufficient to support the Trial Court's findings, the admission of the first CASA Report, if error, was harmless error. Tenn. R. App. P. 36(b); *see also Herrera v. Herrera*, 944 S.W.2d 379, 384-85 (Tenn. Ct. App. 1996) (holding that it was harmless error to admit the report of a guardian *ad litem* which contained inadmissible hearsay because the trial court considered other evidence in determining the appellant's fitness as a custodial parent).

Next, Presley contends the Trial Court erred in admitting into evidence a DHS Report from 1991 regarding a home study of the Shadricks while Mother was staying with them as a foster child. The transcript contained in the record on appeal shows that Presley's attorney's objection was "I would object to a home study being done in '91, eight years ago." While Presley's stated objection at the first hearing appears to be a relevance objection, based upon Tenn. R. Evid. 402, Presley also contends on appeal that the 1991 DHS Report is inadmissible hearsay under Tenn. R. Evid. 802. We will not address the merits of Presley's hearsay argument because he did not timely raise it at the hearing. "Objections to the introduction of evidence must be timely and specific . . . [and] [f]ailure to object [to] evidence in a timely and specific fashion precludes taking issue on appeal with the admission of the evidence." *Grandstaff v. Hawks*, 36 S.W.3d 482, 488 (Tenn. Ct. App. 2000). We do not find reversible error in the Trial Court's allowing this evidence to be presented over the relevance objection. Tenn. R. App. P. 36(b).

With respect to the second CASA Report entered into evidence at the final hearing, we hold that Presley waived any objection to its admission. The record on appeal shows that Presley's attorney lodged an objection only against the admission of the CASA Report's *final recommendation* for custody, instead of the report as a whole. The transcript of the final hearing shows that Presley's attorney stated that "[w]e would stipulate that if [the maker of the report] were called to the stand he would testify as to the statements that he has made in his report. . . . " The Trial Court then stated that "having [Presley's attorney] made that comment on the record, it is my intent to mark this as a stipulated exhibit. . . ." Thereafter, Presley did not object. We hold that relief is not available to Presley since Presley "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a).

We now address the predominant issue on appeal regarding the Trial Court's award of custody and guardianship of the Children. This suit involves competing petitions for custody and guardianship filed by parties who are not the biological or adoptive parents of the Children. This Court has held that "based upon the statutory right of [biological or adoptive] parents to custody and control of their minor children, Tennessee law does not provide for any award of custody . . . to a nonparent *except as may be otherwise provided by our legislature*." *In re Thompson*, 11 S.W.3d 913, 919 (Tenn. Ct. App. 1999). This Court has applied Tenn. Code Ann. § 36-6-106(a) to custody matters involving non-biological parents. *Ward v. Turner*, No. M1999-00719-COA-R3-CV, 2000 WL 1532987, at * 2 (Tenn. Ct. App. Oct. 18, 2000), *no appl. perm. app. filed*. Tenn. Code Ann. § 36-6-106(a) provides:

> In . . . any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:
>
> (1)    The love, affection and emotional ties existing between the parents and child;
>
> (2)    The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>
> (3)    The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . .
>
> (4)    The stability of the family unit of the parents;
>
> (5)    The mental and physical health of the parents;
>
> (6)    The home, school and community record of the child;

-8-

* * * * * *

(9)     The character and behavior of any other person who
         resides in or frequents the home of a parent and such
         person's interactions with the child.

(10)    Each parent's past and potential for future performance of
         parenting responsibilities, including the willingness and
         ability of each of the parents to facilitate and encourage a
         close and continuing parent-child relationship between the
         child and the other parent, consistent with the best interest of
         the child.

Tenn. Code Ann. § 34-2-103, sets forth the priority of persons to be considered by
the court when determining a guardianship petition, as follows:

Subject to the court's determination of what is in the best interests of
the minor, the court shall consider the following persons in the order
listed for appointment of the guardian:

(1) The parent or parents of the minor;

(2) The person or persons designated by the parent or
parents in a will or other written document;

(3) Adult siblings of the minor;

(4) Closest relative or relatives of the minor; and

(5) Other person or persons.

Presley argues that the Trial Court erred in awarding custody and guardianship to the
Shadricks because Father wishes for the Children to be placed with his mother, Presley. Presley
contends that since Father, as the Children's surviving biological parent, has a right to custody and
control of the Children, Father's wishes should be granted by the Trial Court so long as that decision
does not substantially endanger the welfare of the Children. Presley also contends that since she is
a closer relative than the Shadricks, Presley should be given priority for guardianship according to
Tenn. Code Ann. § 34-2-103. Moreover, Presley argues that it was not in the Children's best
interests to be placed in the custody of the Shadricks because the Children had been in Presley's
custody for a period of 15 months, from May 1999 until August 2000, and because of Ms. Shadrick's
cigarette smoking.

In determining custody and guardianship of the Children, the Trial Court used the

factors provided by Tenn. Code Ann. § 36-6-106(a) and § 34-2-103, both of which direct that the Trial Court's decision be based upon the best interest of the Children. While Presley correctly contends on appeal that she is a closer relative of the Children than the Shadricks, this factor alone is not determinative of this matter as the best interest of the Children is the dispositive consideration. Moreover, the interest of continuity of the Children's placement is but one of a number of factors to be considered in determining the Children's custody. *See* Tenn. Code Ann. § 36-6-106(a). In addition, while the Trial Court did not state as such in its Order, the Father's wishes do not control the Trial Court's determination, especially in light of the fact that Father's murder of Mother precipitated this matter.

Furthermore, since the Trial Court's determination was fact-intensive, the Trial Court's decision was based, in large part, upon the credibility of the witnesses. While the Trial Court held in its Order that both Presley and the Shadricks were physically and emotionally capable of caring for the Children, it is clear from the record on appeal that Presley, herself, raised an issue about her credibility when she testified about Father's contact with the Children. The record shows that Presley testified at the first hearing that while she would comply with the Trial Court's no-contact order, she wished that Father could have contact with the Children. At the second hearing, Presley admitted allowing Father telephone contact with the Children in violation of the Trial Court's order. "Unlike this Court, the [T]rial [C]ourt observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). The Trial Court's determinations regarding credibility are accorded deference by this Court. *Id.*; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

We hold that the evidence contained in the record on appeal does not preponderate against the Trial Court's finding that the Children's best interest is served by awarding custody and guardianship to the Shadricks. The proof shows that the Shadricks, compared to Presley, are able to provide a more stable home environment and have more parenting skills and experience as shown by their track record with their four biological children, Mother, and two foster children. *See* Tenn. Code Ann. §§ 36-6-106(a)(4) & (10). In addition, compared to Presley, the Shadricks are less likely to place the Children in contact with Father or others who are potentially abusive. *See* Tenn. Code Ann. §§ 36-6-106(a)(9). Presley allowed Father to have telephone contact with the Children in violation of the Trial Court's no-contact order. It also is unclear whether Presley's mother allowed Father to visit the Children in her home. Moreover, the proof shows that Presley was assaulted by her former boyfriend who had contact with the Children prior to the final hearing. Due to the deference we must provide the Trial Court regarding the credibility of the parties and since the Trial Court had the opportunity to assess the parties' demeanor at the two hearings, we find no error in the Trial Court's award of guardianship to the Shadricks and no abuse of discretion in the Trial Court's award of custody to the Shadricks. Accordingly, we hold that the record does not preponderate against the Trial Court's determination that the Children's best interest is served by awarding custody and guardianship to the Shadricks.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below.  The costs on appeal are assessed against the Appellant, Donna Sharon Presley, and her surety.

_____
D. MICHAEL SWINEY, JUDGE